IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| LISA BRUNSON, | ) |
| Plaintiff, | ) NO. 3:20-cv-01056 |
| v. | ) JUDGE RICHARDSON |
| CAPITOL CMG, INC., et al., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Pending before the Court are two motions (collectively, the "Motions"): (1) a motion to dismiss pursuant to Rule 12(b)(6) (Doc. No. 24, "Publishers' Motion") filed by Defendants Capitol CMG, Inc. ("Capitol CMG") and David C. Cook d/b/a Integrity Music ("Integrity Music"), supported by a memorandum of law (Doc. No. 24-3, "Publishers' Memorandum in Support"); and (2) a motion to dismiss pursuant to Rule 12(b)(6) (Doc. No. 39, "Sinach's Motion") filed by Defendant Osinachi Kalu Okoro Egbu's ("Sinach"),[1] supported by a memorandum of law (Doc. No. 40, "Sinach's Memorandum in Support"). Plaintiff filed responses to both Motions. (Doc. Nos. 26, 43, each a "Response" and collectively "Responses".) Defendants Capital CMG and Integrity Music replied to Plaintiff's Response to Publishers' Motion. (Doc. No. 27, "Publishers' Reply"). Sinach did not reply to Plaintiff's Response to Sinach's Motion. The Motions are ripe for review.

---

[1] Sinach's Motion simultaneously moved alternatively to dismiss on the basis of lack of personal jurisdiction pursuant to Rule 12(b)(2), but this Court denied Sinach's Motion to the extent it sought dismissal under Rule 12(b)(2) and deferred her Motion with respect to her 12(b)(6) claim, which the Court is addressing herein. (*See* Doc. No. 47).

For the reasons discussed herein, the Court will deny both Motions.

## **BACKGROUND**[2]

Plaintiff is a traveling musician and congregational worship leader. (Doc. No. 1 at ¶ 4). Sinach is a Nigerian gospel music performer. (*Id.* at ¶ 5). Integrity Music and Capitol CMG ("Publishers") are the publishing administrators for the disputed work in this matter. (*Id.* at ¶ 6-7).

On or around April 7, 2016, Sinach debuted the song "Waymaker" ("Sinach's song")[3] on an independent release from Nigeria. (*Id.* at ¶ 8). In June 2017, while singing Sinach's song at a worship service, Plaintiff created a "new lyric and melodic composition . . . composed of 78 words, [with] some words repeating. (*Id.* at ¶ 11). Plaintiff essentially incorporated her bridge into Sinach's song by removing Sinach's original bridge and inserting her bridge (the "disputed work"). (*Id.* at ¶ 14). Plaintiff again performed the disputed work in August 2017. (*Id.* at ¶ 15). Plaintiff's composition ("Plaintiff's bridge")[4] is as follows:

---

[2] The facts in this section are taken from Plaintiff's Complaint (Doc. No. 1) and are accepted as true for purposes of the Motions. To the extent that allegations referred to below are legal conclusions, however, they are not accepted as true but rather are identified as merely something that Plaintiff claims, as opposed to something that the Court is accepting as true for purposes of the Motions.

[3] As noted herein, Plaintiff alleges that her bridge was inserted into Sinach's song. Notably, when the Court refers herein to "Sinach's song," it is talking specifically about Sinach's song as it debuted and not Sinach's song with Plaintiff's bridge included therein. When referring to the latter, the Court will refer to "Sinach's song with Plaintiff's bridge in it."

[4] Although Plaintiff does not refer to her composition as a "bridge" in the Complaint, Doc. No. 1, she consistently refers to it as a "bridge" in her Response to Publishers' Motion. Doc. No. 26. The Court will likewise refer to Plaintiff's composition as a bridge.



(*Id*. at ¶ 12).

Plaintiff alleges that after her performances, the disputed work began being copied under Sinach's composition name "Waymaker" and garnered millions of YouTube views. (*Id*. at ¶ 16). The disputed work was then covered by top Christian music artists, including one of Integrity Music's artists "Leeland." (*Id*. at ¶ 17). Plaintiff claims that the "large-scale public releases" of the disputed work put her on notice of Defendants' infringing acts. (*Id*.). Plaintiff registered her bridge for copyright on May 12, 2020: registration number Pau004024415. (*Id*. at ¶ 13).

Plaintiff contends that Integrity Music and Capitol CMG, as publishing administrators, had knowledge of her existing copyright and allowed the disputed work to be exploited by their artists. (*Id*. at ¶ 18). On October 8, 2019, Plaintiff sent a demand letter to Defendants requesting their "proportional income stream" from the disputed work. (*Id*. at ¶ 22). Integrity Music responded that

the disputed work is considered a "prayer language" and is thus not copyright registerable. (*Id*. at ¶ 23).[5]

Plaintiff's claims are (i) federal copyright infringement as to Publishers, (ii) contributory and vicarious copyright infringement as to Publishers, (iii) vicarious copyright infringement as to Sinach, and (iv) violations of the Digital Millennium Copyright Act as to Publishers.

## LEGAL STANDARDS

A. Copyright Infringement

Federal law provides a cause of action for any copyright owner against anyone who infringes the copyright by violating an "exclusive right" of that copyright owner. 17 U.S.C. § 501. The exclusive rights of a copyright owner include the rights to reproduce the copyrighted works; to prepare derivative works; to distribute copies by sale, rental, lease or lending; and to display the copyrighted work publicly. 17 U.S.C. § 106. "A plaintiff alleging copyright infringement must prove that (1) it owns or is the exclusive licensee of a valid copyright and (2) the alleged infringer violated at least one exclusive copyright right prescribed by 17 U.S.C. § 106." *Average Joe's Entm't Grp., LLC v. SoundCloud, LTD*., No. 3:16-cv-3294, 2018 WL 6582829, at *2 (M.D. Tenn. Oct. 17, 2018). The Tenth Circuit has stated the elements somewhat differently. *See Enter. Mgmt. Ltd., Inc. v. Warrick*, 717 F.3d 1112, 1117 (10th Cir. 2013) ("There are two elements to a copyright infringement claim; a plaintiff must show both ownership of a valid copyright, and copying of protectable constituent elements of the work." (citations omitted)). The Tenth Circuit's articulation is helpful here because it highlights the very basis for Defendants' argument here: that an

---

[5] The Complaint is phrased as if the demand letter was sent to all Defendants, but it omits any reference to a response from the other two Defendants.

infringement claim will lie only as to a protected work (and then only as to the particular protectable constituent elements of the protected work).

B. Motion to Dismiss

For purposes of a motion to dismiss, the Court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 679. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id*.; *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010), *cited in Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018). Moreover, factual allegations that are merely *consistent* with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish *plausibility* of entitlement to relief even if it supports the *possibility* of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. This can be crucial, as no such allegations count toward the plaintiff's goal of reaching plausibility of relief. To reiterate, such

5

allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bold" allegations. *Id*. at 681. The question is whether the remaining allegations – factual allegations, *i.e.*, allegations of factual matter – plausibly suggest an entitlement to relief. *Id*. If not, the pleading fails to meet the standard of Federal Rule of Civil Procedure 8 and thus must be dismissed pursuant to Rule 12(b)(6). *Id*. at 683.

As a general rule, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Rule 12(b)(6) unless the motion is converted to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). When a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment. *Doe v. Ohio State Univ.,* 219 F. Supp. 3d 645, 652-53 (S.D. Ohio 2016); *Blanch v. Trans Union, LLC*, 333 F. Supp. 3d 789, 791-92 (M.D. Tenn. 2018).

## **DISCUSSION**

A. Publishers' Motion

Via the Motion, Publishers move for dismissal pursuant to Rule 12(b)(6), arguing in essence (albeit by using misguided references to the inapposite concept of lack of "standing")[6] that Plaintiff cannot establish a valid copyright claim because, according to Publishers: (i)

---

[6] Plaintiff contends that Publishers incorrectly moved to dismiss under Rule 12(b)(6) because the Motion is phrased as a challenge to Plaintiff's "standing." (Doc. No. 26 at 1 n.1). Plaintiff has a point because Publishers refer to Plaintiff's alleged lack of "standing," and a challenge to standing is properly brought as a challenge to subject-matter jurisdiction under Rule 12(b)(1); "standing" refers to a requirement under Article III of the Constitution for a federal court to have subject-matter to adjudicate. That is to say, a plaintiff's lack of standing means a lack of subject-matter jurisdiction for the federal court in which the plaintiff filed. But it is quite clear that despite its regrettably imprecise use of the word "standing" here, Publishers' Motion does not assert a lack of subject-matter jurisdiction based on a lack of Article III standing, and that instead they are indeed asserting a failure to state a claim within the meaning of Rule 12(b)(6). So the Court finds that Publishers' Motion is properly brought under Rule 12(b)(6).

6

unauthorized derivative works are not copyright protectable (Doc. No. 24-3 at 6-7); and (ii) Plaintiff's bridge is an unauthorized derivative work (*Id*. at 7-12). Although the Court agrees with Publishers that unauthorized derivate works are not copyright protectable, it disagrees with Publishers' notion that Plaintiff's bridge is a derivate work in the first place. Although Publishers' Memorandum in Support attempts to frame Plaintiff's work as a derivative work and even states that "Plaintiff alleges that she created [a] [d]erivative [v]ersion", Doc. No. 24-3, nothing in the Complaint makes or supports that allegation. Indeed, the term "derivative work" is not even mentioned in the Complaint. Doc. No. 1. In any event, as discussed herein, the Court finds that Plaintiff's bridge is not a derivative version of Sinach's song.

A "derivative work" is a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted. 17 U.S.C. § 101. A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a "derivative work." *Id*.

Here, the inquiry is whether Plaintiff's bridge, standing alone, was "based upon" Sinach's song. "The only basis for reaching a conclusion that a work is 'based upon' another is if there is substantial similarity between the two . . . ." *Integral Sys., Inc. v. Peoplesoft, Inc.*, No. C-90-2598-DLJ, 1991 WL 498874, at *12 (N.D. Cal. 1991) (concluding that one work cannot be based upon another if the two are not substantially similar). "Substantial similarity is determined under an 'ordinary listener' test. Pursuant to this test, two works are deemed 'substantially similar' where 'the ordinary [listener], unless he set out to detect the disparities, would be disposed to overlook them, and regard the work's aesthetic appeal as the same.'" *Negron v. Rivera*, 433 F. Supp. 2d 204,

7

215 (D.P.R. 2006), *aff'd sub nom. Torres-Negron v. J & N Recs., LLC*, 504 F.3d 151 (1st Cir. 2007) (citations omitted); *see also Stromback v. New Line Cinema*, 384 F.3d 283, 297 (6th Cir. 2004) ("[T]he question is whether, based upon his 'net impression' of the works' expressive elements, the ordinary lay observer would find them substantially similar to one another."); *Ellis v. Diffie*, 177 F.3d 503, 506 (6th Cir. 1999) (stating that the "ordinary observer test" is the traditional standard of copyright infringement).

Plaintiff alleges that in June 2017, she "created an entirely new lyric and melodic composition . . . composed of 78 words, [with] some words repeating". Doc. No. 1 at 3. Taking this allegation as true, Plaintiff's bridge is not substantially similar to Sinach's song because the bridge and song's lyrics and melodies are completely different. *See Castle Rock Entm't, Inc. v. Carol Pub. Group, Inc.*, 150 F.3d 132, 143 n. 9 (2d Cir. 1998) ("Indeed, if the secondary work sufficiently transforms the expression of the original work such that the two works cease to be substantially similar, then the secondary work is not a derivative work and, for that matter, does not infringe the copyright of the original work."). An ordinary listener, listening to Sinach's song and Plaintiff's bridge, both independently, would not find these works' aesthetic appeals as the same, especially with them having totally different lyrics and melodies. To put it differently, a listener who hears Sinach's song with Plaintiff's bridge in it naturally might conclude that such song is substantially similar (or even identical) to Plaintiff's bridge at the particular part where Plaintiff's bridge is. But a listener who hears Sinach song would not conclude that such song is substantially similar to Plaintiff's bridge. Ergo, Plaintiff's bridge is not derivative of Sinach's song. The Court cannot help but speculate that Publishers got somewhat turned around in their analysis, confusing the applicable question (whether the bridge is derivative of Sinach's song) with the

inapplicable question of whether Sinach's song with Plaintiff's bridge in it is derivative (of Sinach's song, of Plaintiff's bridge, or both).

This case is not like *Negron v. Rivera*, where an artist's musical composition was found to be a derivative work of the underlying copyrighted musical composition because it had the same melody, tone, structure, and key as the underlying work. *Negron*, 433 F. Supp. 2d at 215. Although the compositions differed in their wording and rhythm, "[t]he similarities between the songs are comprehensive and are not limited to certain portions or segments of the songs, but are present throughout the entirety of the songs. An ordinary person of reasonable attentiveness would, upon listening to both songs, conclude that the songs were identical except for differences in tempo and lyrics." *Negron*, 433 F. Supp. 2d at 215; *see also Ellis*, 177 F.3d at 506 (noting the district court's finding that two songs' choruses were substantially similar because "they contain[ed] a similar idea, and share[d] some phraseology, rhythms, chord progressions, and 'melodic contours'"). Ultimately, the court found that the composition was not copyright protectable because the artist failed to obtain any license or permission to use the copyrighted work. *Id*.

In the instant matter, Plaintiff's bridge is quite different from Sinach's song. Indeed, the melody and lyrics, key portions of any song, are not the same. In fact, although the bridge has been *inserted into* Sinach's song (thus creating what has been dubbed herein Sinach's song with Plaintiff's bridge in it), there is nothing audially linking the bridge itself to Sinach's song. In her Response, Plaintiff notes that "[t]he bridge is simply not 'based upon' the Song—it was merely incorporated into the Song." (Doc. No. 26 at 7). The Court agrees. And, ultimately, the bridge, standing alone, is what Plaintiff is claiming copyright protection for. So the allegedly protectable work is not in fact a derivative work, let alone an unauthorized derivative work, and thus is not

excluded from copyright protection on the (alleged) grounds that it is an unauthorized derivative work.

There is a slightly different way to express this. "'[A] work will be considered a derivative work only if it would be considered an infringing work if the material that it has derived from a pre-existing work had been taken without the consent of a copyright proprietor of such pre-existing work.'" *See Kohus v. Mariol*, 328 F.3d 848, 858 (6th Cir. 2003) (quoting 1 Nimmer § 3.01)). As this quote reveals, a work is not a derivative work unless it includes material derived (taken) from a pre-existing work. But as far as the allegations of the Complaint indicate, the bridge contains no material taken from Sinach's song (or from any other pre-existing work, for that matter).

Because Plaintiff's bridge is not a derivative work, Publishers' Motion has no basis to succeed. Indeed, Publishers' Motion is based entirely on their allegation that Plaintiff's work is an unauthorized derivative work and therefore not copyright protectable.[7] Accordingly, the Court will deny Publishers' Motion.

B. <u>Sinach's Motion</u>

In Sinach's Memorandum in Support, she states that she "joins in the motion by Co-Defendants CCMG and Integrity to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." Doc. No. 40 at 13. But her joining of Publishers' Motion is to no avail as

---

[7] For Publishers' argument to succeed, it must show both that Plaintiff's bridge is derivative and that it is unauthorized. *See Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1235 (11th Cir. 2010) ("Even if the photographs are derivative works, they must also be unauthorized for defendant-appellee's argument [challenging the plaintiff-appellant's copyright infringement claim] to succeed.") Because (according to Plaintiff's allegations) Plaintiff's work is not a derivative work, the Court need not determine whether (construing the allegations of the Complaint in Plaintiff's favor as required) the bridge was "unauthorized" for purposes of Publishers' argument.

Publishers' Motion is denied for the reason stated above, *i.e.*, that Plaintiff's bridge is not a derivative work. Accordingly, her Motion is likewise to no avail.

To the extent that Sinach purports to assert her own grounds for dismissal under Rule 12(b)(6), she fails to assert separate grounds for dismissal beyond those advanced by Publishers. Sinach contends that "Plaintiff's claim of infringement based on the unauthorized Derivative Version, especially against the owners of the copyright in the underlying Song, must be dismissed." *Id*. at 14. Like Publishers, Sinach contends that "Plaintiff alleges that she created [a] Derivative Version by 'insert[ing]' her new Verse into the Song." *Id*. at 13. However, nothing in the Complaint makes or supports such an allegation. Indeed, the term "derivative work" is not even mentioned in the Complaint. Doc. No. 1. So Plaintiff certainly did not expressly make such an allegation. Nor did she make any such allegation in substance; as discussed above, she alleges a protectable work (the bridge) that simply is not, as far as the allegations of the Complaint, derivative of Sinach's song.

The Court must wonder whether Sinach, like Publishers, simply got turned around, confusing the applicable alleged protectable work (Plaintiff's bridge) with a work (Sinach's song with Plaintiff's bridge in it) as to which Plaintiff makes no claim and claims no protection.[8]

Accordingly, because Sinach's Motion (whether construed as an independent motion or as a mere joinder of Publishers' Motion) is based solely on the incorrect claim that Plaintiff's bridge must be treated (at this early stage) as a derivative work, it will be denied.

---

[8] The fact that Plaintiff's bridge has been inserted into Sinach's song, to create Sinach's song with Plaintiff's bridge in it, may have certain ramifications, but those ramifications are not before the Court given the allegations of the Complaint and the particular argument made in the Motions.

11

## **CONCLUSION**

For the reasons set forth herein, the Court will deny Defendants' Motions (Doc. Nos. 24 and 39).

An appropriate order will be entered.

_____
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE