IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

LISA BRUNSON,                    )
                                 )
    Plaintiff/Counter-Defendant, )
                                 )   NO. 3:20-cv-01056
v.                               )   JUDGE RICHARDSON
                                 )
CAPITOL CMG, INC., et al.,       )
                                 )
    Defendants/Counter-Plaintiffs.)
                                 )
                                 )

## MEMORANDUM OPINION

Pending before the Court is a "Partial Motion to Dismiss and to Strike" (Doc. No. 71, "Motion"), filed by Lisa Brunson, and supported by an accompanying Memorandum of Law (Doc. No. 72, "Brunson's Memorandum"). Capitol CMG, Inc. ("CCMG") and David Cook (doing business as "Integrity Music," the name the Court will use herein) filed a response (Doc. No. 82), and Brunson filed a reply (Doc. No. 87).

For the reasons stated herein, the Motion will be **GRANTED** in part and **DENIED** in part.

### FACTUAL BACKGROUND[1]

CCMG and Integrity Music (collectively "the Publishers"), are music publishers and music publishing administrators who own music copyrights in many popular worship and Christian musical compositions. (Doc. No. 66 at 18). Lisa Brunson, is a congregational worship leader, music director and singer/songwriter. (*Id.*)

---

[1] The facts in this section are, except as otherwise indicated, taken from the Counter-Complaint filed by Integrity Music (Doc. No. 66), and are accepted as true for the purposes of the instant Motion. There is a virtually identical Counter-Complaint filed by CCMG (Doc. No. 67), but the Court will include only citations to Integrity Music's Counter-Complaint.

At all relevant times herein, Integrity Music administered the copyright in "Way Maker,"[2] a song first written and sung by Osinachi Kalu Okoro Egbu ("Sinach"). (*Id.* at 18, 20). "Way Maker" is registered with the United States Copyright Office under PA0002211512 and PA0002254989. (*Id.* at 20). From July 1, 2011 to July 1, 2021, CCMG exclusively administered Integrity's interest in "Way Maker" pursuant to a written administration agreement between the two entities. (*Id.*). In June 2017, more than a year after Sinach debuted the song, Brunson incorporated a composition of hers[3] into "Way Maker," by removing the original bridge and inserting "her work" in its place. (*Id.* at 20). Since June 2017, Brunson has performed "Way Maker" (with her modifications), and that performance has more than 1.8 million views on YouTube. (*Id.*).

Additionally, Brunson registered her composition[4] with the Copyright Office, receiving registration PAU004024415. (*Id.*). The deposit copy[5] Brunson submitted in response to a challenge from a Copyright Office examiner removed the measure notation of "56", which was in the original

---

[2] The Counter-Complaints do not describe the roles of Integrity Music as copyright administrator, but the Court gathers that this typically would include responsibilities such as reviewing requests to use the copyrighted material, preparing and executing license agreements as to the copyrighted material, negotiating license fees, preparing license agreements, monitoring third-party usage and copyrighted material, and responding to questions related to the copyrighted material.

[3] "Her work" is the term (with quotation marks included) for this composition by the Publishers in the Counter-Complaints. By "her work," the Publishers are referring to what the Publishers note was "identified" by Brunson in paragraph 12 of her Complaint. (Doc. No. 66 at 20). Brunson, for her part, had called this "Plaintiff's Copyrighted Work" in paragraph 12 in her Complaint and identified it therein by including a copy of its musical score. (Doc. No. 1 at 3-4). For her part, Brunson (in paragraph 14 of her Complaint) alleged what she had done with "Plaintiff's Copyrighted Work"—namely, she took out the "bridge" of "Waymaker" and inserted her work in its place. (*Id.* at 4).

[4] The Court hereafter refers to Brunson's composition—"Plaintiff's Copyrighted Work" (or, in the Publishers' parlance, "her work")—as "Brunson's work."

[5] When applying for a copyright registration, the application must include a copy (or copies) of the work for which registration is sought. 17 U.S.C. § 408(b). Such a copy is known as a deposit copy.

deposit copy and had indicated that Brunson's work was part of a larger work. (*Id.* at 21). Specifically, the measure notation indicated that Brunson's work had replaced the original fifty-sixth measure of "Way Maker."[6] (*Id.* at 21).

## PROCEDURAL BACKGROUND

Brunson, who is the Plaintiff (and Counter-Defendant) in this action, filed the present case on December 9, 2020, alleging various claims of copyright infringement against Defendants Sinach, Integrity Music, and CCMG. (Doc. No. 1). On October 27, 2021, the Publishers (CCMG and Integrity Music) then filed counterclaims against Brunson, alleging their own claims of copyright infringement and fraud on the copyright office. (Doc. Nos. 66 and 67). Brunson, as Counter-Defendant, then filed this Motion, whereby Brunson primarily seeks dismissal of the counterclaims under Rule 12(b)(6), arguing that the Publishers' claim[7] of copyright infringement is barred by the statute of limitations and that the claim for fraud on the copyright office fails to state a claim upon which relief can be granted. (*Id.* at 2). In the Motion, Brunson also seeks to strike some of the affirmative defenses asserted by the three Defendants (the two Publishers and Sinach) in their respective Answers (Doc. Nos. 66, 67, and 68).

## LEGAL STANDARD

---

[6] The undersigned could be missing something, but it appears to him that perhaps the Publishers' allegation here would have been more precise had it been to the effect that Brunson's work replaced a series of measures in "Way Maker" beginning at the original 56th measure of "Way Maker." At least as the undersigned understands the notion of a "measure" in a musical score, paragraph 12 of the Complaint indicates that Brunson's work comprises numerous measures and that they are numbered 56 through 66. (Doc. No. 1 at 4). This of course suggests that Brunson's work replaced the original 56th through 66th measures of "Way Maker."

[7] In their respective Counter-Complaints, each of the (two) Publishers brought a copyright-infringement claim, each virtually identical to the other; each of the Publishers also brought a fraud-on-the-copyright-office claim, each virtually identical to the other. For ease of reference, the Court will use the term "claim" (in the singular) to refer collectively to the Publishers' copyright infringement claims, and the Court will do likewise with respect to the Publishers' fraud-on-the-copyright-office claims

### I. Rule 12(b)(6) Motion

For purposes of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 679. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id*.; *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010), *cited in Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018). Moreover, factual allegations that are merely *consistent* with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish *plausibility* of entitlement to relief even if it supports the *possibility* of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. This can be crucial, as no such allegations count toward the plaintiff's goal of reaching plausibility of relief. To reiterate, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bold" allegations. *Id*. at 681. The question is whether the remaining allegations—factual

allegations, *i.e.*, allegations of factual matter—plausibly suggest an entitlement to relief. *Id*. If not, the pleading fails to meet the standard of Federal Rule of Civil Procedure 8 and thus must be dismissed pursuant to Rule 12(b)(6). *Id*. at 683.

As a general rule, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Rule 12(b)(6) unless the motion is converted to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). When a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment. *Doe v. Ohio State Univ.,* 219 F.Supp.3d 645, 652-53 (S.D. Ohio 2016); *Blanch v. Trans Union, LLC*, 333 F. Supp. 3d 789, 791-92 (M.D. Tenn. 2018).

On a Rule 12(b)(6) motion to dismiss, "[t]he moving party has the burden of proving that no claim exists." *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross and Blue Shield,* 552 F.3d 430, 433 (6th Cir.2008). That is not to say that the movant has some *evidentiary* burden; as should be clear from the discussion above, evidence (as opposed to *allegations* as construed in light of any allowable matters outside the pleadings) is not involved on a Rule 12(b)(6) motion. The movant's burden, rather, is a burden of *explanation*; since the movant is the one seeking dismissal, it is the one that bears the burden of explaining—with whatever degree of thoroughness is required under the circumstances—why dismissal is appropriate for failure to state a claim.

## II. Rule 12(f) Motion to Strike Affirmative Defenses

Fed. R. Civ. P. 12(f) states that a Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." A motion to strike "is the primary procedure for objecting to an insufficient defense." *Regions Bank v. SoFHA Real Estate, Inc*., No. 2:09–CV–57, 2010 WL 3341869, at *12 (E.D. Tenn. Aug. 25, 2010) (citing 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1380 (3d ed. 1998)).

Typically, "[a]n affirmative defense may be pleaded in general terms and will be held to be sufficient ... as long as it gives plaintiff fair notice of the nature of the defense." *Lawrence v. Chabot*, 182 Fed. Appx. 442, 456 (6th Cir. 2006) (internal quotations omitted).

In the Sixth Circuit, "[m]otions to strike are viewed with disfavor and are not frequently granted." *Operating Engineers Loc. 324 Health Care Plan v. G & W Const. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015) (citing *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953)).

## DISCUSSION

### I. The Publishers' copyright-infringement claim is not time-barred.

Brunson first argues that the Publishers' claim for copyright infringement is barred by the statute of limitations. (Doc. No. 72 at 4). Aptly quoting 17 U.S.C. § 507(b), Brunson notes that the Copyright Act, 17 U.S.C. § 1 *et seq.*, establishes a limitations period of three years, and that her allegedly derivative work was created in June 2017, more than three years before the Publishers filed their copyright infringement (counter-)claim in October of 2021. (*Id.* at 4-5).

The Publishers respond that "the discovery rule precludes dismissal" of their copyright-infringement claim. (Doc. No. 82 at 10). The Publishers contend that they lacked knowledge of Brunson's (alleged) infringements of "Way Maker" in 2017, and that there is "at a minimum" a question of fact as to the exact date of accrual of their copyright-infringement claim.[8] (*Id.* at 11). Brunson replies that the Publishers have failed to plead facts in their Counter-Complaint that support their assertion of the discovery rule. (Doc. No. 87 at 2).

As the Sixth Circuit has previously explained,

---

[8] The Publishers here speak of the date of "accru[al]," but in context it is clear that what they more precisely mean is the date on which the limitations period began running, which (as noted below) is not necessarily the same thing as the date of accrual.

> When a statute does not speak to the issue, federal courts will generally apply the discovery rule to toll the running of the statute of limitations until the plaintiff discovers or should have discovered his or her injury. *Rotella v. Wood*, 528 U.S. 549, 555, 120 S. Ct. 1075, 145 L.Ed.2d 1047 (2000). The discovery rule is applied when the plaintiff, "due to facts and circumstances not within his control," has no knowledge that an injury occurred. *Univ. of Pittsburgh v. Townsend*, 542 F.3d 513, 527 (6th Cir. 2008).

*Guy v. Mercantile Bank Mortg. Co.*, 711 F. App'x 250, 252–53 (6th Cir. 2017).[9] The Copyright Act does not specify when the limitations period starts to run on an infringement claim, and therefore the discovery rule applies and "[a] copyright-infringement claim 'accrues when a plaintiff knows of the potential violation or is chargeable with such knowledge.'" *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 390 (6th Cir. 2007) (quoting *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 621 (6th Cir. 2004)).[10]

---

[9] *Guy* refers to "toll[ing]" the running of the limitations period. To understand what *Guy* is and is not saying, therefore, it is worth recalling the undersigned's observations from a quarter century ago:

> The term "tolling" is used two different ways. First, "tolling" often refers to a postponement of the date the statute begins to run, usually the accrual date. By contrast, some courts use the term "tolling" to refer to suspending the running of the limitations period after it already has begun to run. Some tolling provisions cannot be placed comfortably in either tolling category, and some tolling provisions can either postpone the starting of the clock or stop it after it begins running, depending upon the timing of the event that triggers the tolling. Nevertheless, the distinction exists and is analytically important.

Eli J. Richardson, *Eliminating the Limitations of Limitations Law*, 29 ARIZ. ST. L.J. 1015, 1039-40 (1997). *Guy* clearly was referring to "tolling" in the former sense, *i.e.*, the postponement of the date on which the limitations period otherwise would begin to run. In other words, *Guy* explains that the discovery rule, when applicable, serves to peg the start of the running of the limitations to a date later than it otherwise might be were some rule other than the discovery rule applied to peg the start date—and *Guy* uses the word "toll" as shorthand for describing how the discovery rule delays the start of the running of the limitations period. In other words, the verb "toll" can mean multiple things, but *Guy* here uses it as a synonym for "delay" or "postpone."

[10] The discussion here necessitates the making of an additional observation about terminology. As the undersigned noted years ago, "[a] limitations period generally begins to run from the time the cause of action 'accrued.'" Eli J. Richardson, *Eliminating the Limitations of Limitations Law*, 29 ARIZ. ST. L.J. 1015, 1036 (1997). Yet, "the date of accrual is not necessarily synonymous with the date that the limitations

Generally, a plaintiff (or counter-plaintiff) is "not required to 'anticipate and plead around all potential defenses.'" *Kensu v. Warden*, No. 12–11877, 2013 WL 1774637, at *5 (E.D. Mich. Apr. 25, 2013) (quoting *Xechem, Inc. v. Bristol–Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004)). "Nonetheless, the Sixth Circuit has held that a plaintiff [or counter-plaintiff] may have an obligation to plead tolling or facts in avoidance of the statute of limitations defense when it is apparent from the face of the complaint that the time limit for bringing the claim has expired." *Kensu v. Rapelje*, No. 12-11877, 2013 WL 1774637, at *5 (E.D. Mich. Apr. 25, 2013). However, when the discovery rule is the default rule for determining when a limitations period begins to run, its applicability does not need to be established by the plaintiff as grounds for avoiding an otherwise sound statute-of-limitations defense. The Sixth Circuit made this clear in *Nat'l Credit Union Admin. Bd. v. Jurcevic*, 867 F.3d 616 (6th Cir. 2017), in which the court rejected defendant's argument that the plaintiff's tort claims should be dismissed because the plaintiff failed to allege

---

period begins to run; the limitations period begins to run from the date of accrual only to the extent that applicable law says so." *Id*. "As it turns out, applicable law usually does say so; by judicial decision, by a general statute relating to the running of limitations periods, or by language in the particular statute of limitations itself, a statute's limitations period usually runs from the date of accrual." *Id*. at 1036-37. For this reason, federal courts often equate the two dates, sometimes without explaining why the two are the same (*i.e.*, why, under applicable law, the date the limitations period starts to run is indeed the date of accrual). In other words, courts (including some cited herein) often use the term "date of accrual" as shorthand for "date on which the limitations period began to run," even if they do not necessarily mean to specifically convey that the date the limitations period starts to run is indeed the date of "accrual" as that technical term is properly construed. *See*, *e.g.*, *D.S.S. by & through McDowell v. Prudential Ins. Co. of Am.*, No. 21-5315, 2022 WL 95165, at *4 (6th Cir. Jan. 10, 2022) ("[On December 31, 2014, the cause of action accrued . . . and the [one-year] limitations period began to run. Thus, the district court did not err in determining that the cause of action accrued on December 31, 2014, and that the limitations period ran one year after that date."); *Bishop v. Children's Ctr. For Dev. Enrichment*, 618 F.3d 533, 536 (6th Cir. 2010) (noting that while for some statutes the statute of limitations is "borrowed from state law, the actions accrue and the statutory period begins to run according to federal law"). As a general matter, this may not foster any confusion. But where the date the limitations period begins to run is determined by the discovery rule, that date is *not* generally the date of accrual, and so in this context the two dates should not be equated or referred to interchangeably. *See, e.g.*, *Rotkiske v. Klemm*, 140 S. Ct. 355, 360 (2019) (contrasting the "standard rule" of accrual—where "the limitations period commences when the plaintiff has a complete and present cause of action"—to the "discovery rule." (internal quotation marks omitted)). The Court endeavors herein to adhere to this principle.

facts showing that these claims were timely under the discovery rule, which the Sixth Circuit was treating as the statutorily mandated default rule for purposes of its analysis:

> To show that these tort claims are time barred, [the defendant] thus had to establish that the [plaintiff], exercising reasonable care, discovered or should have discovered his fraudulent conduct before April 29, 2010. But the district court inverted this burden. It held that, because the [plaintiff] did not allege that these claims accrued before April 29, 2010, it could not be so. That's not how affirmative defenses, such as a statute of limitations, work. [] It was [the defendant]'s burden to show that the [plaintiff] should have discovered his fraudulent conduct before the relevant time period, not the [plaintiff]'s burden to plead around the possibility.

*Id.* at 624–25.

In other words, *if* (as is not always the case) the discovery rule is the default rule, the plaintiff does not need to specifically invoke it as grounds for delaying the start of the running of the limitations period so as to make timely a claim that otherwise would have been untimely.[11] This is because if the discovery rule is the default rule, generally it simply cannot be said that the claim would have been untimely but for the application of the discovery rule; instead, generally, it is the discovery rule *itself* that determines whether the claim is untimely. In other words, where the discovery rule is the default rule, the plaintiff does not have to allege facts supporting application of the discovery rule or facts showing that the claim was timely under the discovery rule. This only stands to reason; courts generally do *not* impose upon plaintiffs the obligation to allege facts showing (1) the applicability of the default rule for pegging the start of the running of the limitations or (2) that under the default rule, the claim is not time-barred.

---

[11] The situation is quite different when the discovery rule is *not* the default rule for pegging the start of the running of the limitations period, and instead must be specially relied on by the plaintiff as an exception to the general rule. *See Nw. Nat. Ins. Co. of Milwaukee, Wisconsin v. Joslyn*, Nos. 93-4266, 93-4295, 93-4332, 1995 WL 270995, *4 (6th Cir. May 8, 1995) ("When the complaint is untimely [under the default rule, when it is not the discovery rule], and the plaintiff is relying on a discovery rule, the date of the discovery should be pled.").

As noted above, the discovery rule is the default rule for determining when the limitations period begins to run on a copyright-infringement claim, and therefore the Publishers were not required to affirmatively plead the date of discovery to avoid a statute-of-limitations defense. Instead, the burden was on Brunson to show that the Publishers discovered her alleged copyright infringement more than three years before they filed their claim, and she failed to carry that burden. Except as indicated in the paragraph below, Brunson did not challenge the copyright-infringement claim on any basis other than the statute of limitations. And so (again, except as indicated below), the claim survives the Motion.

Brunson additionally argues that the Publishers are not entitled to statutory damages or attorneys' fees, because the date of the copyright registration for "Way Maker" was more than three months after the song was first published. (Doc. No. 72 at 5 (citing 17 U.S.C. § 412(2) (stating that "no award of statutory damages or of attorney's fees . . . shall be made for any infringement of copyright" if the effective date of registration is more than three months after the first publication of the work.))). The Publishers concede this point and "withdraw their requests for statutory damages and attorney's fees." (Doc. No. 82 at 7). Accordingly, the Motion will be granted without objection to the extent that it seeks dismissal of the Publishers' request for statutory damages and attorney's fees.

## II. The Publishers' claim for declaratory judgment will be dismissed.

In their Counter-Complaints, the Publishers allege that Brunson purposefully submitted a deposit copy of her work that removed any indication that the work was "simply an insert" into "Way Maker" (*i.e.*, an insertion of Brunson's work in place of the part of the original score of "Way Maker" beginning at measure 56). (Doc. No. 66 at 22). The Publishers further state that "[t]his knowing failure to truthfully identify the complete work in the deposit to the Copyright Office constitutes fraud on the U.S. Copyright Office as a complete work was required to be submitted." (*Id*).

In turn, the Publishers request the Court "declare that Brunson's registration was obtained through fraud, and that [her work] is not subject to copyright protection." (*Id.* at 23). In Brunson's Memorandum, Brunson argues that the Publishers' request for declaratory judgment should be dismissed because (according to her): "(1) the sufficiency or insufficiency of the deposit copy does not affect the validity of the registration, and (2) [she] was only required to submit a deposit copy of what she was seeking [to register], not a copy of [her] work combined with Sinach's version of 'Way Maker.'" (Doc. No. 72 at 7-8).

Fraud on the Copyright Office is not an independent claim, but some courts in the Sixth Circuit nonetheless have "permitted claims for declaratory judgment that a copyright is invalid based on fraud on the copyright office." *Gomba Music, Inc. v. Avant*, 62 F. Supp. 3d 632, 642 (E.D. Mich. 2014). To succeed in such a request, a party "must show that 'the application for copyright registration is factually inaccurate, that the inaccuracies were willful and deliberate, and that the Copyright Office relied on those misrepresentations.'" *Schenck v. Orosz,* 3:13–CV–0294, 2013 WL 5963557, at *12 (M.D. Tenn. Nov.7, 2013) (quoting *Jedson Engineering, Inc. v. Spirit Const. Servs. Inc.,* 720 F.Supp.2d 904 (S.D. Ohio 2010)). Here, the Publishers argue that Brunson's copyright application was allegedly factually inaccurate because Brunson did not provide a "complete copy" of her work as required by 17 U.S.C. § 408(b). The Publishers argue that Brunson's deposit copy was not a complete copy since it did not disclose that her work was actually created to be part of a larger work that belonged to someone else. (Doc. No. 66 at 22). The Court assumes *arguendo* that a failure to provide a complete copy is not merely a violation of a particular requirement (*i.e.*, to provide a complete copy), but also grounds for finding that the copyright application was factually inaccurate.

Though the definition of "complete copy" is not contained in the Copyright Act itself, there is a definition provided in the Code of Federal Regulations. Under 37 C.F.R. § 202.20(b), a

complete copy of an unpublished work is a "copy or phonorecord representing the entire copyrightable content of the work for which registration is sought."[12] Additionally, 17 U.S.C. § 409(9) states that a copyright application for a derivative work should identify "any preexisting work or works that it is based on or incorporates." In this case, the Publishers contend that Brunson's work was derivative of "Way Maker" and thus was a "derivative work," such that the application needed to identify "Way Maker" as a preexisting work in order for Brunson to be credited with depositing a "complete copy" as required. Brunson, on the other hand, contends that her work was not derivative of "Way Maker" and therefore she was required only to provide a deposit copy of her work itself, without disclosing any relationship between it and "Way Maker."

The Copyright Act defines "derivative work" as "a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted." 17 U.S.C. § 101. As the undersigned explained previously,

> A "derivative work" is a work based upon one or more preexisting works. . . . . "The only basis for reaching a conclusion that a work is 'based upon' another is if there is substantial similarity between the two . . . ." *Integral Sys., Inc. v. Peoplesoft, Inc.*, No. C-90-2598- DLJ, 1991 WL 498874, at *12 (N.D. Cal. 1991) (concluding that one work cannot be based upon another if the two are not substantially similar). "Substantial similarity is determined under an 'ordinary listener' test. Pursuant to this test, two works are deemed 'substantially similar'

---

[12] The Copyright Act defines "publication" as "the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending." 17 U.S.C. § 101. Section 101 (the "Definitions" section of the Copyright Act) then provides one example of something that constitutes publication, and one example of something that does not constitute publication: "The offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication. A public performance or display of a work does not of itself constitute publication." *Id.*

Based on the definition and examples set forth in Section 101, and the allegations contained in the Publishers' claims for relief, the Court perceives no allegations in the Counter-Complaints that Brunson "published" her work and will thus proceed by treating her copyright registration as one for unpublished material.

> where 'the ordinary [listener], unless he set out to detect the disparities, would be disposed to overlook them, and regard the work's aesthetic appeal as the same.'" *Negron v. Rivera*, 433 F. Supp. 2d 204, 215 (D.P.R. 2006), *aff'd sub nom. Torres-Negron v. J & N Recs., LLC*, 504 F.3d 151 (1st Cir. 2007) (citations omitted); *see also Stromback v. New Line Cinema*, 384 F.3d 283, 297 (6th Cir. 2004) ("[T]he question is whether, based upon his 'net impression' of the works' expressive elements, the ordinary lay observer would find them substantially similar to one another."); *Ellis v. Diffie*, 177 F.3d 503, 506 (6th Cir. 1999) (stating that the "ordinary observer test" is the traditional standard of copyright infringement)

*Brunson v. Capitol CMG, Inc.*, No. 3:20-CV-01056, 2021 WL 4480479, at *3 (M.D. Tenn. Sept. 29, 2021)).

Here, the Publishers plead no facts to suggest to the Court that Brunson's work was derivative. Though the Publishers make the conclusory statement that Brunson's act of "remov[ing] the original bridge and insert[ing] her work in its place" "constitute[s] the creation of an unauthorized derivative work," the alleged facts in the Counter-Complaints do not support such an assertion. (Doc. No. 66 at 20). The Publishers merely note that Brunson deleted a measure notation at the top of her deposit copy, which (prior to the deletion) had indicated that her work "was actually the fifty sixth measure of a larger work." (*Id.* at 21). This observation is not relevant to the actual test for determining whether a work is derivative: whether an ordinary listener would find that the two works are substantially similar. *See Negron*, 433 F. Supp. 2d at 215. Indeed, the Publishers incorporate paragraph 12 of Brunson's Complaint into their Counter-Complaints. (Doc. No. 66 at 20 (citing Doc. No. 1 at 3-4)). Paragraph 12 of Brunson's Complaint states, "[t]he new composition is as follows:" and then includes a copy of the sheet music for Brunson's work. Paragraph 12 of the Complaint, as incorporated by the Publishers, actually suggests to the Court that Brunson's work is a "new composition" and therefore not derivative.

As noted above, a derivative work is one "based on" one or more preceding works. The Publishers might have been in a stronger position here if a work could be deemed "based on" a

preexisting work because it was *inspired by*, or *intended for use with or within,* a preexisting work. But the Publishers have not shown, and the Court does not discern, that this is the case.

The Court will not belabor its conclusion that based on the pleadings to date, Brunson's work is not derivative. This is a conclusion that the Court has already explained in a somewhat different and more detailed manner. *See Brunson*, 2021 WL 4480479, at *3-5. Accordingly, the Publishers' claim for declaratory judgment of fraud on the copyright office fails due to (1) a lack of alleged factual matter plausibly suggesting that Brunson's work was derivative of "Way Maker" and (2) the corresponding implausibility of the claim that Brunson's copyright application was "factually inaccurate" specifically because she did not identify "Waymaker" as a preexisting work on which her (supposedly derivative) work was based. Thus, the Publishers' claim for fraud on the copyright office will be dismissed for failure to state a claim under Rule 12(b)(6).

**III. Brunson's Motion to Strike will be granted in part and denied in part.**

Brunson's final request in the Motion is to strike certain affirmative defenses asserted by Sinach, CCMG, and Integrity Music (collectively, "Defendants"). Specifically, Brunson seeks to strike the following affirmative defenses asserted by all three Defendants: fair use, laches, waiver, estoppel, license/consent/acquiescence, joint authorship, and joint ownership. (Doc. No. 72 at 8-10). Additionally, Brunson seeks to dismiss the affirmative defense of "conduct of others" asserted only by CCMG. (*Id.* at 10). Regarding all of the defenses except laches, Brunson argues essentially that they should be stricken for Defendants' failure to make clear the support or basis for the defense. As to the laches defense, Brunson argues that the defense "simply has no application in copyright cases." (*Id.* at 9). In response, Defendants argue that they are required to plead only "fair notice" of their affirmative defenses, which (according to Defendants) they have done.

"Rule 8(b)(1) provides generally that '[i]n responding to a pleading, a party must ... state in short and plain terms its defenses to each claim.' Rule 8(d)(1) requires that averments in pleadings be 'simple, concise, and direct,' and that '[n]o technical form is required.'" *Montgomery v. Wyeth*, 580 F.3d 455, 468 (6th Cir. 2009) (quoting Fed. R. Civ. P. 8(b)(1), 8(d)(1)). Affirmative defenses may be pled in general terms, as long as they give fair notice to the plaintiff "of the nature of the defense." *Lawrence v. Chabot*, 182 F. App'x 442, 456 (6th Cir. 2006) (quoting 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1274). The Court finds that the asserted defenses of waiver and estoppel do not provide fair notice to Brunson of the nature of those defenses. Unlike some of the other challenged defenses—such as fair use, license, joint authorship, and joint ownership—the application of a waiver or estoppel defense to the present case is not intuitive from Brunson's claims or the facts alleged either by Brunson or by the Publishers. And Defendants fail to provide any explanation for the application of waiver or estoppel here. Thus, these two affirmative defenses will be stricken.

The Court also will grant Brunson's motion to strike Defendant CCMG's asserted defense of "conduct of others," though for a different reason. While the "conduct of others" can be implicated in other affirmative defenses, Defendant CCMG has not cited—and the Court was unable to find on its own—Sixth Circuit case law suggesting that "conduct of others" is a stand-alone affirmative defense.

Finally, the Court will grant Brunson's Motion to Strike the asserted defense of laches, though for still different reasons. The Supreme Court has previously held that laches was unavailable as a defense against copyright infringement claims for damages that were brought within the three-year statutory window (as Brunson noted is true for her claim in the present case). *See Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 667–68 (2014) ("Laches, we hold,

"Rule 8(b)(1) provides generally that '[i]n responding to a pleading, a party must ... state in short and plain terms its defenses to each claim.' Rule 8(d)(1) requires that averments in pleadings be 'simple, concise, and direct,' and that '[n]o technical form is required.'" *Montgomery v. Wyeth*, 580 F.3d 455, 468 (6th Cir. 2009) (quoting Fed. R. Civ. P. 8(b)(1), 8(d)(1)). Affirmative defenses may be pled in general terms, as long as they give fair notice to the plaintiff "of the nature of the defense." *Lawrence v. Chabot*, 182 F. App'x 442, 456 (6th Cir. 2006) (quoting 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1274). The Court finds that the asserted defenses of waiver and estoppel do not provide fair notice to Brunson of the nature of those defenses. Unlike some of the other challenged defenses—such as fair use, license, joint authorship, and joint ownership—the application of a waiver or estoppel defense to the present case is not intuitive from Brunson's claims or the facts alleged either by Brunson or by the Publishers. And Defendants fail to provide any explanation for the application of waiver or estoppel here. Thus, these two affirmative defenses will be stricken.

The Court also will grant Brunson's motion to strike Defendant CCMG's asserted defense of "conduct of others," though for a different reason. While the "conduct of others" can be implicated in other affirmative defenses, Defendant CCMG has not cited—and the Court was unable to find on its own—Sixth Circuit case law suggesting that "conduct of others" is a stand-alone affirmative defense.

Finally, the Court will grant Brunson's Motion to Strike the asserted defense of laches, though for still different reasons. The Supreme Court has previously held that laches was unavailable as a defense against copyright infringement claims for damages that were brought within the three-year statutory window (as Brunson noted is true for her claim in the present case). *See Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 667–68 (2014) ("Laches, we hold,

cannot be invoked to preclude adjudication of a claim for damages brought within the three-year window.") (interpreting 17 U.S.C. § 507(b)). Alternatively, in any event it appears to the Court that Defendants have abandoned their affirmative defense of laches by failing to respond to Brunson's challenge to it made in her Motion to Strike. Defendants respond generally that "all eight of the affirmative defenses [Brunson] seeks to strike are sufficiently pleaded because they provide [] fair notice." (Doc. No. 82 at 21). However, Brunson sought to strike Defendants' laches defense not on the basis of lack of fair notice, but rather on the statutory basis explained in *Petrella*. Defendants have failed to even acknowledge, let alone respond in opposition, to this argument, and the Court will therefore deem the laches defense abandoned. *See Chem. Bank v. Kausmeyer*, No. 4:15CV1850, 2016 WL 7178662, at *5 (N.D. Ohio Dec. 9, 2016) (finding that a defendant abandoned two affirmative defenses by failing to respond to the plaintiff's summary judgment arguments against them).

Defendants have requested leave to amend any affirmative defenses the Court determines are insufficiently pled. The Court will grant Defendants leave to amend only the affirmative defenses of waiver, estoppel, and conduct of others pursuant to Fed. R. Civ. P. Rule 15(a)(2). The affirmative defense of laches will be stricken *without* leave to amend, both because the defense has been abandoned and because any amendment would be futile in light of *Petrella*.

## CONCLUSION

For the reasons discussed herein, Brunson's Motion (Doc. No. 71) will be **GRANTED in part** and **DENIED in part**. Specifically, the Motion will be GRANTED both insofar as it seeks dismissal of the Publishers' claim for declaratory judgment of fraud on the copyright office and insofar as it seeks dismissal of the Publishers' request for statutory damages and attorney's fees

contained in the claim for copyright infringement. As to the remaining aspects of the Publishers' copyright infringement claim, the Motion will be DENIED.

Additionally, the Motion will also be GRANTED insofar as it seeks to strike Defendants' asserted defenses of waiver, estoppel, conduct of others, and laches. However, the Court will grant Defendants leave to amend the defenses of waiver, estoppel, and conduct of others (but not laches). To the extent the Motion seeks to strike any other affirmative defenses, it will be DENIED.

An appropriate order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE