UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION


LISA BRUNSON,                                )
                                             )
        Plaintiff/Counter-Defendant,         )
                                             )       NO. 3:20-cv-01056
                v.                           )       JUDGE RICHARDSON
                                             )
DAVID COOK d/b/a INTEGRITY MUSIC,            )
CAPITOL CMG, INC. et al.,                    )
                                             )
        Defendants.                          )


**RESPONSE OF THE REGISTER OF COPYRIGHTS**
**TO REQUEST PURSUANT TO 17 U.S.C. § 411(b)(2)**

On June 22, 2023, the Court requested advice from the Register of Copyrights

("Register") pursuant to 17 U.S.C. § 411(b)(2) on the following question:

> 1. Would the Register of Copyrights have refused Copyright
> Registration No. PAU004024415 had [she] known, at the time
> Plaintiff knowingly represented on the application for copyright
> registration that the work to be copyrighted was unpublished, [and]
> that each of the following events described in the Court's finding on
> pages 12-27 of the Court's memorandum opinion had occurred:
>
> > a. The work had been posted to Plaintiff' church/employer's
> > YouTube page at Plaintiff's direction.
> >
> > b. Plaintiff authorized her employer to create a shortened
> > version of the same video to be shared to Twitter and
> > Instagram and which was in fact ultimately shared on
> > Twitter and Instagram.
> >
> > c. A video of a church service in which Plaintiff performed
> > her work live on November 8, 2017, [] was streamed online
> > by her employer via "Rod Parsley TV" and appears to have
> > been available for download given that the platform on

which the service was available permits the "linked file" to be downloaded.[1]

The Register hereby submits her response. In sum, based on the legal standards and examining practices set forth below, had the U.S. Copyright Office ("Copyright Office" or "Office") known prior to registration that the musical work titled "You Never Stop Working" ("Work") was distributed with Plaintiff's authorization to YouTube, Instagram, and Twitter, it would not have accepted the application for registration. Instead, the Office would have corresponded with Plaintiff to request that she amend the application to provide the date the Work was first published, and to provide a complete copy of the Work as first published. If she declined to do so, the Office would have refused registration.

Had the Office known prior to registration that the Work was streamed as part of a large church service and subsequently available for download on the church's website, it would have questioned whether Plaintiff authorized such distribution. If she had done so, the Office would have asked her to amend the application and requested a complete copy of the Work as first published.

## BACKGROUND

### I.   Examination History

A review of the records of the Office shows the following:

On May 8, 2020, the Copyright Office received an application to register a musical work comprised of ten measures and seventy-eight words titled "You Never Stop Working." The application identified Lisa Marie Ireland-Brunson ("Ms. Brunson") as the sole author and copyright claimant. Although the application initially stated that the Work was completed in

---

[1] Req. to Reg. of Copyrights Pursuant to 17 U.S.C. § 411(b)(2) at 1–2 (June 22, 2023) ("Request").

2017 and first published on June 5, 2017, after four rounds of correspondence from the Office.[2]

Ms. Brunson amended the application to remove the publication date and designate the Work as

unpublished.  Based on this correspondence, the Office accepted her representations as true and

accurate.  It registered the claim with an effective date of registration ("EDR")[3] of May 12, 2020,

and assigned registration number PAu004024415 ("Registration").

## II.        The Court's Request

As the Office understands the origin of this dispute, in 2015 Defendant Osinachi Kalu

Okoro Egbu, also known as Sinach ("Sinach"), released the musical work titled "Way Maker"

("Way Maker Version 1").[4]  Way Maker Version 1 is composed of three verses, a chorus, and a

bridge.  Ms. Brunson claims to have created the Work in 2017 while leading congregational

worship.  She asserts that she subsequently removed the original bridge from Way Maker

Version 1, thereby creating a modified version.  This second version ("Way Maker Version 2")

contains the Work for which she sought copyright registration.[5]  At a 2017 church conference

---

[2] Through her agents, Ms. Brunson initially submitted a deposit copy of sheet music that started
at measure 56.  Because it appeared that the deposit was incomplete, the registration specialist
asked Ms. Brunson to provide a complete copy of the Work.  Email from U.S. Copyright Office
to Adam Carpenter (May 11, 2020).  In response, Ms. Brunson uploaded a new deposit copy of
sheet music starting at measure 1.  The registration specialist then asked Ms. Brunson to confirm
whether the new deposit represented the complete, first published version of the Work.  Ms.
Brunson confirmed that it did.  Noting that there appeared to be "more complete" versions of the
Work available online, the specialist also provided Ms. Brunson with the statutory definition of
publication and asked her to explain the form in which the Work had been published.  Email
from U.S. Copyright Office to Adam Carpenter (May 15, 2020).  In response, without
explanation, Ms. Brunson asked the Office to proceed with the registration as "unpublished."
Email from Adam Carpenter to U.S. Copyright Office (May 26, 2023).
[3] The EDR is the date the Office received a completed application, correct deposit copy, and the
proper filing fee.  17 U.S.C. § 410(d).
[4] Mem. Op. at 3 (Mar. 8, 2023) ("Opinion"), ECF No. 175.
[5] Compl. for Copyright Infringement at 1 (Dec. 19, 2020) ("Complaint"), ECF. No. 1.

service called Dominion Camp Meeting, Ms. Brunson performed Way Maker Version 2, which went viral after it was posted on YouTube.[6]

Ms. Brunson brought this action for copyright infringement against Sinach, Capitol CMG, Inc., and David C. Cook d/b/a Integrity Music after they distributed cover versions of Way Maker Version 2 performed by their artists. Ms. Brunson claims "Sinach expressly agreed to the licensing of [Way Maker Version 2] with full knowledge that the inclusion of the . . . Work was thrusting [Way Maker Version 1] into a new echelon of international renown, and willingly infringed . . . [the] Work."[7] Ms. Brunson included Capitol CMG, Inc. and David C. Cook d/b/a Integrity Music in the lawsuit as publishing administrators of Way Maker Version 2.[8]

Capitol CMG, Inc. and David C. Cook d/b/a Integrity Music (collectively "Defendants") now seek a declaratory judgment against Ms. Brunson for fraud on the Copyright Office. They allege that Ms. Brunson made fraudulent statements or omissions in her Registration. Specifically, they challenge the validity of the Registration, arguing that Ms. Brunson included two types of inaccurate information on her application. First, Defendants argue that Ms. Brunson represented to the Register that the Work was complete, representing a stand-alone original musical composition, when it was "obviously derivative and dependent upon" Sinach's Way Maker Version 1.[9] Second, they argue that she improperly represented the Work as unpublished when it had been published on several occasions before she submitted her registration application in 2020.[10]

---

[6] *Id.* at 5.
[7] *Id.*
[8] *Id.*
[9] Opinion at 7.
[10] *Id.*

4

The Court has not requested the Register's advice regarding the first allegation.[11]

However, regarding the second allegation, the Court found that the Work was published within

the meaning of the Copyright Act when: (1) it was posted to Rod Parsley TV, an on-demand

streaming platform, and made available for download, and (2) Ms. Brunson authorized it to be

made available on YouTube, Instagram, and Twitter.[12]  The Court further found that Ms.

Brunson "had knowledge of the facts . . . and the law . . . of the inaccurate information contained

on the application for the copyright registration."[13]  Therefore, upon finding that Defendants

"met their burden under 17 U.S.C. § 411," the Court requested the Register "to advise the Court

whether the inaccurate information discussed [in the Opinion], if known to the [Register], would

have caused [her] to refuse registration."[14]

## ANALYSIS

### I.      Relevant Statutes, Regulations, and Agency Practice

An application for copyright registration must comply with the requirements of the

Copyright Act set forth in 17 U.S.C. §§ 408(a), 409, and 410.  Regulations governing

applications for registration are codified in title 37 of the Code of Federal Regulations at

37 C.F.R. §§ 202.1 to 202.24.  Further, the principles that govern how the Office examines

registration applications are set out in the *Compendium of U.S. Copyright Office Practices*, *Third

Edition* ("COMPENDIUM (THIRD)"), an administrative manual that instructs agency staff regarding

their statutory and regulatory duties and provides expert guidance to copyright applicants,

practitioners, scholars, courts, and members of the general public regarding Office practices and

---

[11] *Id.* at 27–29.
[12] *Id.* at 15, 26.
[13] *Id.* at 33.
[14] *Id.* at 37.

related principles of law. The Office publishes periodic revisions of COMPENDIUM (THIRD) to provide additional guidance where necessary and to reflect changes in the law or Office practices; these revisions are made available for public comment prior to finalization. Because Ms. Brunson filed her registration application in 2020, the governing principles the Office would have applied to evaluate the applications are set forth in the version of COMPENDIUM (THIRD) that was released in September 2017.[15] The Office would apply the practices set forth in the current edition of COMPENDIUM (THIRD) to any supplementary registration application filed today.[16]

### A. Publication

In pertinent part, the statutory requirements for copyright registration dictate that, "if the work has been published," an application for registration shall include "the date and nation of its first publication."[17] The Copyright Act defines "publication" as

> [T]he distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending. The offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication.[18]

This provision identifies two types of publication: distribution and offers to distribute. As COMPENDIUM (THIRD) explains with regard to "distribution," "publication occurs when one or more copies or phonorecords are distributed to a member of the public who is not subject to

---

[15] U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES (3d ed. 2017) ("2017 COMPENDIUM (THIRD)"), https://www.copyright.gov/comp3/2017version/docs/compendium.pdf.
[16] U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES (3d ed. 2021) ("2021 COMPENDIUM (THIRD)"), https://copyright.gov/comp3/docs/compendium.pdf.
[17] 17 U.S.C. § 409(8).
[18] *Id.* § 101 (definition of "publication").

any express or implied restrictions concerning the disclosure of the content of that work."[19]  For

example, "distributing copies of a motion picture through a retail service constitutes publication

of that work."[20]

The Office does not consider a work to be published if it is merely displayed or

performed online.[21]  It does, however, consider a work to be published if it is made available

online and the copyright owner authorizes the end user to retain copies or phonorecords.[22]  "A

critical element of publication is that the distribution of copies or phonorecords to the public

must be authorized by the copyright owner. . . . To be considered published, the copyright owner

must expressly or impliedly authorize users to make retainable copies or phonorecords of the

work, whether by downloading, printing, or by other means."[23]  For instance, a work that is

expressly authorized for download by members of the public by including a "Download Now"

button, is considered published.[24]  Additionally, if the website on which a work is posted

contains an obvious notice, including in the terms of service, indicating that a work may be

reproduced or retransmitted, the work is considered published if the copyright owner authorized

that distribution.[25]

The second means of "publication" within the statutory definition is an "offer[] to

distribute" a work.  Here, the mere "offering" of copies of a work to "a group of persons" for

"further distribution, public performance, or public display" constitutes publication; distribution

---

[19] 2017 COMPENDIUM (THIRD) § 1905.1; *see also* H.R. REP. NO. 94-1476, at 138 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5754.
[20] 2017 COMPENDIUM (THIRD) § 1905.1.
[21] 17 U.S.C. § 101 (defining "publication") ("A public performance or display of a work does not of itself constitute publication."); *see* 2017 COMPENDIUM (THIRD) § 1008.3(C).
[22] 2017 COMPENDIUM (THIRD) § 1008.3(B).
[23] *Id.* § 1008.3(C).
[24] *Id.* § 1008.3(F).
[25] *Id.*

itself is not required.[26]  For example, COMPENDIUM (THIRD) advises that "[p]ublication occurs when phonorecords are offered to radio stations for the purpose of broadcasting the songs and sound recordings embodied therein."[27]

The Office also considers a work to be published if the owner offers to distribute it to multiple intermediaries for further online distribution, online public performance, or online public display.[28]  Published works include, for instance, a sound recording that has been offered by the copyright owner for distribution to multiple online streaming services or a photograph that has been offered by the copyright owner to multiple stock photo companies for purposes of further distribution.[29]

The offering of a work to a *single person* does not qualify as publication.  And offering a copy of a work to a group of persons is not enough: the offer must also be made with the purpose of further distributing that work, publicly performing that work, or publicly displaying that work.[30]

Finally, a work is only published if it is posted with the authorization of the copyright owner.  The 1976 Copyright Act "recognized for the first time a distinct statutory right of first

---

[26] The actual distribution of (in addition to the mere "offering to distribute") copies or phonorecords to a group of persons for the enumerated purposes also constitutes publication under the statute.  *See* 2 Paul Goldstein, GOLDSTEIN ON COPYRIGHT § 3.3.2 (3d ed. 2021).

[27] 2017 COMPENDIUM (THIRD) § 1906.1.

[28] *Id.* § 1008.3(B); *see also* H.R. REP. NO. 94–1476 at 138 ("On the other hand, the definition also makes clear that, when copies or phonorecords are offered to a group of wholesalers, broadcasters, motion picture theaters, etc., publication takes place if the purpose is 'further distribution, public performance, or public display.'").

[29] 2017 COMPENDIUM (THIRD) § 1008.3(B).

[30] *See NBC Subsidiary (KCNC-TV), Inc. v. Broad. Info. Servs., Inc.*, 717 F. Supp. 1449, 1452 (D. Colo 1988) ("The offering . . . must be made to 'a group of persons for the purposes of further distribution, public performance, or public display []' . . . . Congress would have shortened the definition . . . had it not intended to qualify the definition by requiring that the offering be made for one or more of the specific purposes provided.") (internal citation omitted).

publication."[31]  This right allows the copyright owner to decide when, where and in what form to

first publish a work, or whether to publish it at all.[32]  Thus, COMPENDIUM (THIRD) recognizes

that publication only occurs if the distribution or offer to distribute copies is made "by or with

the authority of the copyright owner."[33]  The Office therefore does not consider a work to be

published if it is posted online without such authorization.[34]

### B. Deposit Copy for Published Works

To register a copyright claim, an applicant must submit "(i) a completed application, (ii)

the appropriate filing fee, and (iii) a complete deposit of the work."[35]  The Copyright Act

generally requires two complete copies of the best edition of a published work to be deposited

with the application but authorizes the Register to permit the deposit of only one copy or

identifying material in certain circumstances.[36]  A "complete" copy of a published work

"includes all elements comprising the applicable unit of publication of the work, including

elements that, if considered separately, would not be copyrightable subject matter."[37]  "If the

work is published solely in an electronic format, a copy or phonorecord of that work is complete

---

[31] *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 552 (1985).

[32] *Id.* at 553; *see also* H.R. REP. NO. 94–1476 at 61 ("The exclusive rights accorded to a copyright owner under section 106 are 'to do and to authorize['] any of the activities specified in the five numbered clauses.").

[33] 2017 COMPENDIUM (THIRD) § 1902.

[34] *Id.* § 1008.3(F).  The Office does not believe that merely posting a work on a publicly accessible website constitutes publication, as some courts have held.  *See, e.g.*, *Getaped.com, Inc.* v. *Cangemi*, 188 F. Supp. 2d 398, 402 (S.D.N.Y. 2002), basing publication solely on the technical ability of users to duplicate or further distribute a work posted on the internet is inconsistent with the established principle that publication requires the copyright owner's authorization.  *See* 2017 COMPENDIUM (THIRD) § 1902.

[35] 2017 COMPENDIUM (THIRD) § 1503.1.

[36] 17 U.S.C. § 408(b)(2), (c).

[37] 37 C.F.R. § 202.20(b)(2)(ii).

if it is submitted in a digital file that contains all elements constituting the work in its published form (*i.e.*, the complete work as published)."[38]

## C. Supplementary Registration

The Office recognizes that there may be a need for a registrant to correct certain errors or provide additional information after it has issued a registration. It therefore permits registrants to file an application for a supplementary registration to correct certain errors or amplify the information provided in the original registration.[39] The availability of a supplementary registration to correct errors is limited, however. COMPENDIUM (THIRD) provides that a supplementary registration can be used to correct "an error involving the date of publication."[40] It cannot be used "to correct an error in the deposit copy(ies) that were submitted with the application for [the initial] registration."[41]

If an application for supplementary registration is approved, the Office prepares a certificate that contains pertinent information from the application, creates a public record that identifies and describes the changes or revisions that have been made, and assigns a separate

---

[38] 2017 COMPENDIUM (THIRD) § 1505.4; *see* 37 C.F.R. § 202.20(b)(2)(iii)(B) ("Publication in an electronic only format requires submission of the digital file[s] in exact first-publication form and content.").

[39] 17 U.S.C. § 408(d); 37 C.F.R. § 202.6; 2021 COMPENDIUM (THIRD) § 1802. The Office may decline to issue a supplementary registration when it is aware that there is actual or prospective litigation involving a registration (1) if the proposed change would be directly at issue in the litigation, and (2) if the proposed amendment may confuse or complicate the pending dispute. 2021 COMPENDIUM (THIRD) § 1802.9(G).

[40] 2021 COMPENDIUM (THIRD) § 1802.6(I). But note, this would only be permissible if the deposit that was submitted with the initial registration would satisfy the deposit requirements for a published work. *See id.* § 1802.7(D).

[41] *Id.* § 1802.7(D) (citing 37 C.F.R. § 202.6(d)(4)(ii)).

registration number and EDR[42] to the supplementary registration.[43]  It does not cancel or replace

the original registration or the public record of that registration, or change the information or

EDR set forth therein.  Instead, the original registration and the supplementary registration,

including the EDRs for each, coexist in the public record because the "supplementary

registration augments — but does not supersede — the information" submitted in the original

registration.[44]  COMPENDIUM (THIRD) explicitly defers to a court to determine whether the

changes in the supplementary registration should be deemed effective as of the original EDR, or

the EDR for the supplementary registration, providing the following guidance:

> The Office maintains both records to allow courts to decide (i)
> whether the changes made by the supplementary registration are
> material, and (ii) whether those changes should or should not be
> deemed effective as of the date that the [initial] registration was
> made or the date that the supplementary registration was made.[45]

## D.  Other Copyright Office Regulations and Practices

Copyright Office regulations require applicants to make "[a] declaration [] that the

information provided within the application is correct to the best of the [applicant's]

knowledge."[46]  Generally the Office "accepts the facts stated in the registration materials, unless

they are contradicted by information provided elsewhere in the registration materials or in the

Office's records."[47]

---

[42] The EDR for the supplementary registration "is the day on which an acceptable application and filing fee, which are later determined by the Register of Copyrights or by a court of competent jurisdiction to be acceptable for supplementary registration, have all been received in the Copyright Office."  *Id.* § 1802.12.

[43] *Id.* § 1802.10.  The Office will also place a note in the public record for the supplementary registration that cross-references the registration number and the year of registration for the initial registration.  *Id.* § 1802.11.

[44] *Id.* § 1802; *see* 17 U.S.C. § 408(d).

[45] 2021 COMPENDIUM (THIRD) § 1802.12.

[46] 37 C.F.R. § 202.3(c)(3)(iii).

[47] 2017 COMPENDIUM (THIRD) § 602.4(C).

It is not unusual, however, for a registration specialist to correspond with an applicant about factual assertions if they appear to conflict with other information in the application materials.[48]  Accordingly, if the Office becomes aware of an error at the time of application, such as if the deposit appears to be incomplete or if there is a question as to whether the work has or has not been published, it provides the applicant an opportunity to correct the error or verify the facts within a specified period of time.[49]  If the applicant responds satisfactorily in a timely fashion, the Office will proceed with the registration.  The Register's response herein is premised on the fact that any errors identified were not timely corrected through such a process.

## II.      Register's Responses to Court's Questions

Based on the foregoing statutory and regulatory standards, and the Office's examining practices, the Register responds to the Court's questions as follows:

### Question 1(a)

Had the Office been aware, prior to registration, that the Work had been posted to Ms. Brunson's church/employer's YouTube page at her direction, it would not have registered it.

As explained above, publication is "the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending."[50] Accordingly, a work is published "when one or more copies or phonorecords are distributed to a member of the public who is not subject to any express or implied restrictions concerning the disclosure of the content of that work."[51]  When a copyright owner authorizes a work to be

---

[48] *Id.*

[49] Generally, when a registration specialist corresponds with an applicant, the applicant will be given 45 days to respond to the specialist's questions concerning issues in the application materials.  *Id.* § 605.6(B), (D).

[50] 17 U.S.C. § 101 (defining "publication").

[51] 2017 COMPENDIUM (THIRD) § 1905.1.

submitted to a third-party platform, and the terms of service for use of that platform indicate that

the platform "is not subject to any express or implied restrictions concerning the disclosure of the

content of that work," the authorized distribution of that work constitutes publication under the

Act. [52]  As noted by the Court, YouTube's terms of service provide:

> By providing Content to the Service, you grant to YouTube a
> worldwide, nonexclusive, royalty-free, sublicensable and
> transferable license to use that Content (including to reproduce,
> distribute, prepare derivative works, display and perform it) in
> connection with the Service and YouTube's (and its successors'
> and Affiliates') business, including for the purpose of promoting
> and redistributing part or all of the Service. [53]

These terms effectuate a "lending" or "lease" [54] to YouTube, which as the Court noted, permits

the platform "wide latitude to use the creator's content." [55]  Here, because the Work was

submitted to YouTube at Ms. Brunson's direction, and posted in accordance with YouTube's

terms of service in 2017, the Work was published prior to the date she submitted the application

for registration. [56]  If the Office had known that the Work was published on YouTube at Ms.

Brunson's direction in 2017, it would have corresponded with her to request that she amend her

application to provide the date the Work was first published.

In addition, the Office would have requested that Ms. Brunson submit a complete deposit

of the Work as first published.  As explained above, to register a copyright claim in a published

work, the applicant must submit a deposit that "contains all elements constituting the work in its

---

[52] *Id.*

[53] Opinion at 25.

[54] *See* 2017 COMPENDIUM (THIRD) § 1905.2 (noting that "publication occurs when copies or
phonorecords are distributed by means of rental, lease, or lending (*i.e.*, where the copies or
phonorecords change hands, but there is no change in the ownership of those copies or
phonorecords)").

[55] Opinion at 26.

[56] Because the Register has determined that the Work was published as a "distribution," the
Office does not examine this scenario as an "offering to distribute."

published form."[57]  In the 2017 YouTube video, the Work was published as part of Way Maker

Version 2, which Ms. Brunson created by removing the original bridge from Sinach's Way

Maker Version 1 and inserting the Work in its place.  Therefore, she would have been required to

submit a complete copy of Way Maker Version 2 as first published.[58]  If she declined to do so,

then the Office would have refused registration.

**Question 1(b)**

Likewise, had the Office been aware prior to registration that Ms. Brunson authorized

her employer to share the Work on Twitter and Instagram, it would not have registered it.  Like

YouTube, Twitter and Instagram provide terms of use and service that effectuate a "lending" or

"lease."[59]  If the Office had known that the Work was published on Instagram and Twitter in

2017 at Ms. Brunson's direction, it would have corresponded with her to request that she amend

the application and submit a complete copy of Way Maker Version 2 as first published on

---

[57] 2017 COMPENDIUM (THIRD) § 1505.4.

[58] Because it appears that Way Maker Version 2 contains an appreciable amount of previously published copyrightable material that Ms. Brunson does not own, she would also be required to limit her claim by excluding the third-party musical composition and lyrics.  *See id.* § 621 ("To register a derivative work, a compilation, a collective work, or any other type of work that contains an appreciable amount of unclaimable material, the applicant should identify and exclude that material in the application"); *id.* at Glossary (defining "unclaimable material" as "(i) previously published material; (ii) previously registered material; (iii) material that is in the public domain; and/or (iv) copyrightable material that is not owned by the claimant named in the application").

[59] *See* Opinion at 25–25 (quoting INSTAGRAM, *Terms of Use*, https://help.instagram.com/58106 6165581870 (granting Instagram a "a non-exclusive, royalty-free, transferable, sub-licensable, worldwide license to host, use, distribute, modify, run, copy, publicly perform or display, translate, and create derivative works of your content"), and TWITTER, *Terms of Service*, https://twitter.com/en/tos (granting Twitter "a worldwide, non-exclusive, royalty-free license (with the right to sublicense) to use, copy, reproduce, process, adapt, modify, publish, transmit, display and distribute such Content in any and all media or distribution methods now known or later developed")).

Instagram or Twitter (whichever came first). If she declined, then the Office would have refused registration.

**Question 1(c)**

Independent of the scenarios posed above, had the Office been aware that prior to registration the Work was performed as part of Way Maker Version 2, streamed online, and subsequently available for download on a church website, it would not have registered it. As discussed, the Office considers a work published if it is made available online and the copyright owner authorizes the end user to retain copies.[60] Therefore, the Office would have questioned whether Ms. Brunson authorized making the Work available for download as part of the church service. If, as the Court found, Ms. Brunson implicitly authorized such publication, then the Office would have asked Ms. Brunson to amend the application to provide the date the Work was first published and to submit a complete copy of Way Maker Version 2 as first published on the church's website. If she declined, then the Office would have refused registration.

As noted above, a supplementary registration may be used to correct certain errors or amplify the information provided in a copyright registration.[61] However, a supplementary registration cannot be used "to correct an error in the deposit copy(ies) that were submitted with the application for [the initial] registration."[62] Accordingly, Ms. Brunson cannot file an application for a supplementary registration for the purpose of providing a deposit of the complete copy of the Work as first published online.[63] To correct her claim, Ms. Brunson would

---

[60] 2017 COMPENDIUM (THIRD) § 1008.3(B).
[61] 17 U.S.C. § 408(d); 37 C.F.R. § 202.6; COMPENDIUM (THIRD) § 1802.
[62] 2021 COMPENDIUM (THIRD) § 1802.7(D) (citing 37 C.F.R. § 202.6(d)(4)(ii)).
[63] 17 U.S.C. § 408(d); 37 C.F.R. § 202.6; 2021 COMPENDIUM (THIRD) § 1802.

need to submit a new application for registration, along with a correct deposit copy, namely, a complete copy of Way Maker Version 2.

**CONCLUSION**

Based on the available facts, the Court's analysis, and the relevant law, regulations, and Office practices, the Register hereby advises the Court that the Office (a) would have refused the Registration if it had been aware prior to registration that the Work was distributed with Ms. Brunson's authorization to YouTube; and (b) would have refused the Registration if it had been aware prior to registration that the Work was distributed with her authorization to Instagram and Twitter. Additionally, had the Office been aware, prior to registration, that the Work—as inserted into Sinach's Way Maker Version 1—was streamed as part of a large church service and subsequently made available for download on the church's website, it would have questioned whether Ms. Brunson authorized the publication. If she had authorized this publication, the Office would have asked her to amend the application and to submit a complete copy of the Work as first published.

Dated: January 29, 2024

Shira Perlmutter
Register of Copyrights and Director
of the U.S. Copyright Office