# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| LISA BRUNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 3:20-cv-01056 |
| v. | ) | |
| | ) | District Judge Eli J. Richardson |
| CAPITOL CMG, INC., DAVID C COOK | ) | |
| d/b/a INTEGRITY MUSIC, and OSINACHI | ) | Magistrate Judge Alistair Newbern |
| KALU OKORO EGBU, | ) | |
| | ) | |
| Defendants. | ) | |

---

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
## THEIR RENEWED MOTION FOR SUMMARY JUDGMENT

---

# TABLE OF CONTENTS

**Page**

BACKGROUND ..................................................................................................2

I.     SINACH AUTHORS THE SONG "WAY MAKER" IN 2015 ........................2

II.    PLAINTIFF "CREATES" AND PERFORMS YNSW ..................................2

III.   PLAINTIFF PUBLISHES YNSW ..............................................................3

IV.   PLAINTIFF OBTAINS THE INVALID REGISTRATION................................4

V.    PLAINTIFF INITIATES THIS ACTION AGAINST DEFENDANTS ............................6

VI.   DISCOVERY ESTABLISHES THAT YNSW IS AN UNAUTHORIZED DERIVATIVE WORK ...................................................................................7

     A.     LEELAND MOORING AND MICHAEL W. SMITH........................7

     B.     DR. LAWRENCE FERRARA ............................................................7

     C.     DR. MELANIE LOWE .......................................................................8

     D.     DR. LESTER RUTH ...........................................................................10

VII.  THE COPYRIGHT REGISTER OPINES THAT SHE WOULD NOT HAVE ISSUED THE REGISTRATION HAD SHE KNOWN THE TRUE FACTS .................10

LEGAL STANDARD..........................................................................................11

ARGUMENT .......................................................................................................11

I.     PLAINTIFF'S COPYRIGHT INFRINGEMENT CLAIMS FAIL ....................12

     A.     YNSW, as an Unauthorized Derivative Work, Is Not Copyright Protectable.................................................................................................12

          1.     There Is No Genuine Dispute That Defendants, at All Relevant Times, Owned or Controlled "Way Maker" .................................12

          2.     There Is No Genuine Dispute That YNSW Is Based Upon, and Thus Derivative of, "Way Maker"..............................................12

          3.     Plaintiff Does Not Dispute That Her Creation of YNSW—a Derivative Work—Was Unauthorized.......................................15

       4.      Unauthorized Derivative Works Are Unprotectable..................................16

B.     Plaintiff Cannot Sue the Author/Owners of "Way Maker" for Infringement of a Work that Derives from "Way Maker"....................................16

C.     YNSW Is Not an Independent Work ......................................................................18

D.     YNSW Is Not Protectable Because Plaintiff's Lyrics Reflect Common Liturgical Ideas That Are Not Protectable Under the Copyright Act ...................20

E.     Because the Register Has Advised the Court that the Registration Is Invalid, Plaintiff's Claims Must Be Dismissed.......................................................20

F.     Plaintiff Has Not Established That Defendants Infringed Her Purported Copyright ...............................................................................................................22

II.    PLAINTIFF'S DMCA CLAIM FAILS FOR THE SAME REASONS AS HER COPYRIGHT INFRINGEMENT CLAIMS....................................................................23

III.   PUBLISHERS ARE ENTITLED TO SUMMARY JUDGMENT AS TO LIABILITY ON THEIR COPYRIGHT INFRINGEMENT CLAIM ...............................23

CONCLUSION......................................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Stallone*,
No. 87-0592 WDK, 1989 U.S. Dist. LEXIS 11109 (C.D. Cal. Apr. 25, 1989)...........12, 16, 17

*Bridgeport Music, Inc. v. Estate of Wallace*,
No. 3:05-0205, 2006 U.S. Dist. LEXIS 106442 (M.D. Tenn. Aug. 16, 2006).......................16

*Bridgeport Music, Inc. v. WB Music Corp.*,
508 F.3d 394 (6th Cir. 2007) ...................................................................................12, 20, 22

*Broad. Music, Inc. v. DMX Inc.*,
683 F.3d 32 (2d Cir. 2012).........................................................................................................22

*Bucklew v. Hawkins, Ash, Baptie & Co.*,
LLP, 329 F.3d 923 (7th Cir. 2003) .........................................................................................19

*Campbell v. Acuff-Rose Music, Inc.*,
510 U.S. 569 (1994).....................................................................................................................15

*Christian v. Mattel*,
286 F.3d 1118 (9th Cir. 2002) ............................................................................................17, 18

*Frank Betz Assocs. v. J.O. Clark Constr., L.L.C.*,
No. 3:08-cv-00159, 2010 U.S. Dist. LEXIS 53437 (M.D. Tenn. May 30,
2010) ................................................................................................................................................23

*Gates Rubber Co. v. Bando Chemical Indus., Ltd.*,
9 F.3d 823 (10th Cir. 1993) ......................................................................................................20

*Hiller, LLC v. Success Grp. Int'l Learning All, LLC*,
976 F.3d 620 (6th Cir. 2020) ............................................................................................18, 19

*Krechmer v. Tantaros*,
747 F. App'x 6 (2d Cir. 2018) ..................................................................................................23

*Murray Hill Publ'ns, Inc. v. ABC Commc'ns, Inc.*,
264 F.3d 622 (6th Cir. 2001), *abrogated on other grounds by Reed Elsevier,*
*Inc. v. Muchnick*, 559 U.S. 154 (2010) .................................................................................23

*Palladium Music, Inc. v. EatSleepMusic, Inc.*,
398 F.3d 1193 (10th Cir. 2005) ...............................................................................................16

*Peer Int'l Corp. v. Luna Records*,
887 F. Supp. 560 (S.D.N.Y. 1995)....................................................................................15, 24

*Pickett v. Prince*,
 207 F.3d 402 (7th Cir. 2000) ....................................................12, 17

*Reed Elsevier, Inc. v. Muchnick*,
 559 U.S. 154 (2010)................................................................20

*Rich & Rich P'ship v. Poetman Records USA, Inc.*,
 714 F. Supp. 2d 657 (E.D. Ky. 2010) ....................................15

*SAS Inst. Inc. v. S&H Comput. Sys.*,
 605 F. Supp. 816 (M.D. Tenn. 1985)......................................23

*Woolfsongs Ltd. v. Slaughterhouse, LLC*,
 No. 15-03049 TJH, 2016 U.S. Dist. LEXIS 184763 (C.D. Cal. Feb. 5, 2016).......................15

## Statutes

17 U.S.C. § 101 ..........................................................................12, 13, 16

17 U.S.C. § 102 ..........................................................................12

17 U.S.C. § 106 ..........................................................................22, 23

17 U.S.C. § 115 ..........................................................................22

17 U.S.C. § 408(b) ......................................................................4

17 U.S.C. § 411(a) ......................................................................20

17 U.S.C. § 411(b)(1) ..................................................................20

Copyright Act ............................................................................1, 5, 11

Copyright Act § 106(2) ................................................................17

Digital Millennium Copyright Act................................................23

## Court Rules

Fed. R. Civ. P. 56(c) ..................................................................11

Fed. R. Evid. 702—Dr ................................................................13

## Other Authorities

https://www.tunecore.com/music-publishing-administration.......................22

https://www.youtube.com/watch?v=n4XWfwLHeLM ..................................2

Melville B. Nimmer & David Nimmer, 1 Nimmer on Copyright § 3.03 (2024)....................12, 13

YouTube, Harvest Music Live, *available at*
https://www.youtube.com/@HarvestMusicLive (last visited March 11, 2024) ........................3

YouTube, June 5, 2017, *available at*
https://www.youtube.com/watch?v=CvCZbL23eVY (last visited March 11,
2024) ..................................................................................................................................3

Through this lawsuit, Plaintiff seeks to turn the Copyright Act on its head. Without Defendants' permission, Plaintiff created an unauthorized derivative work derived from Defendants' song and registered that derivative work by submitting materially inaccurate information to the Copyright Office. Plaintiff then sued Defendants[1] for copyright infringement, claiming that Defendants infringed her unauthorized and unlawful derivative work. In essence, Plaintiff seeks to profit from Defendants for her *own* copyright infringement of Defendants' work and her *own* invalid copyright registration (the "Registration"). Plaintiff's lawsuit, and her gambit to profit from her own copyright infringement, should be rejected as a matter of law.

In 2015, Sinach released a contemporary worship song entitled "Way Maker." In 2017, Plaintiff unilaterally removed Sinach's original bridge from "Way Maker" and, without authority, inserted in its place her own "work," which she now calls "You Never Stop Working" ("YNSW"). YNSW consists of ten measures of music and three short, repetitive phrases—"[e]ven when I don't see you, You're working," "[e]ven when I don't feel it You're working," and "[y]ou never stop, You never stop working." (Doc. 1 ¶¶ 11-12, 14.) Plaintiff sang YNSW during a performance of "Way Maker" while "leading congregational worship" at World Harvest Church ("WHC"). (*Id.* ¶ 15 n.1.)

As both this Court and the Register of Copyrights (the "Register") have already concluded, Plaintiff "published" YNSW before she applied for the Registration. (Doc. 175; Doc. 186-1.) Despite having published YNSW, Plaintiff represented to the Copyright Office that YNSW was unpublished. Plaintiff also submitted a false deposit copy consisting solely of the ten measures comprising YNSW, rather than a true and accurate deposit copy reflecting YNSW as it was "first

---

[1] Defendants are Capitol CMG, Inc. ("CCMG"), David C Cook d/b/a Integrity Music ("Integrity" and, together with CCMG, "Publishers") and Osinachi Kalu Okoro Egbu ("Sinach").

published," i.e., as embodied within "Way Maker." As such, Plaintiff's copyright registration is invalid.

After obtaining the invalid Registration, Plaintiff brought this action for copyright infringement against Defendants. The undisputed facts established that (1) YNSW is not an autonomous work and is, instead, adapted from "Way Maker;" (2) Plaintiff never sought permission from Defendants to create YNSW; and (3) Plaintiff has no valid copyright registration for YNSW. Consequently, YNSW is an unauthorized derivative work, and Plaintiff's claims must be dismissed. Defendants respectfully request that the Court dismiss Plaintiff's claims with prejudice and find Plaintiff liable for infringing the Publishers' copyright in "Way Maker."

## BACKGROUND

### I.    SINACH AUTHORS THE SONG "WAY MAKER" IN 2015

On December 31, 2015, Sinach released "Way Maker" as a music video on YouTube (*see* https://www.youtube.com/watch?v=n4XWfwLHeLM). (SUMF ¶ 1.) She released the single in April 2016. (*Id.* ¶ 2.) Plaintiff admits that Sinach, is the author of "Way Maker", and CCMG and Integrity, as "publishing administrators," own or control the copyright in and to "Way Maker." (Doc. 1 ¶¶ 6-7.) "Way Maker" quickly became a worldwide hit. (SUMF ¶ 4.)

### II.   PLAINTIFF "CREATES" AND PERFORMS YNSW

Plaintiff Lisa Brunson was a full-time staff member at WHC in Ohio for eighteen years. (Doc. 103-3 at 11:7-9; 23:24-25; 22:21-22.) Plaintiff performed a variety of roles for WHC, including serving in a local church pastoral role and as an executive administrator for WHC's pastor, Rod Parsley. (*Id.* at 21:23-22:15.)

Plaintiff unilaterally added a section to "Way Maker" in 2017. (*Id.* ¶¶ 11, 14.) She "removed the original bridge" from "Way Maker" and "inserted" in its place the phrases "[e]ven when I don't see you, You're working," "[e]ven when I don't feel it You're working," and "[y]ou

never stop, You never stop working." (*Id.* ¶¶ 11-12, 14.) Plaintiff inserted these 10 measures while singing "Way Maker"—YNSW begins on measure 56 of "Way Maker." (SUMF ¶ 5-7). In an August 2017 Twitter post, Plaintiff referred to YNSW as "some spontaneous worship at the end of the ***actual song*** [i.e., "Way Maker"]." (*Id.* ¶ 9 (emphasis added)).

## III.    PLAINTIFF PUBLISHES YNSW

A June 5, 2017 video posted to YouTube shows Plaintiff performing "Way Maker"/YNSW at WHC.[2] "Way Maker" lyrics can be seen projected on the screen during this performance, but not the lyrics of YNSW. (*Id.*)[3] On July 2, 2017, Plaintiff again performed "Way Maker"/YNSW at WHC's "Dominion Camp Meeting" in Columbus, Ohio. (*See* Doc. 103-5.) This performance of YNSW was recorded and posted to YouTube by World Harvest Live on August 4, 2017 (the "YouTube Video"). (Doc. 103-6.)

On July 13, 2017, Plaintiff directed WHC to post the recording of this particular performance of "Way Maker"/YNSW on the Harvest Music Live[4] YouTube channel, thereby making YNSW available on demand to the general public. In an email with the subject line, "HML [Harvest Music Live] YouTube Songs," Plaintiff wrote: "Here is the order I would like us to put up on Youtube for the next few weeks," listing "Waymaker – Sunday AM [Dominion Camp Meeting]" with a timestamp of "24:26-37:21." (Doc. 103-4 at WHC000023.) On August 3, 2017, Brunson asked that a shorter excerpt of the YouTube Video be created and disseminated: "Can

---

[2] *See* "Way maker, miracle worker" WHC choir," YouTube, June 5, 2017, *available at* https://www.youtube.com/watch?v=CvCZbL23eVY (last visited March 11, 2024).

[3] Plaintiff identified June 5, 2017 as the "Date of 1st Publication" of YNSW in her initial application to register YNSW with the Copyright Office. (SUMF ¶ 14.)

[4] The WHC "Harvest Music Live" YouTube Channel has approximately 36.4K subscribers. *See* YouTube, Harvest Music Live, *available at* https://www.youtube.com/@HarvestMusicLive (last visited March 11, 2024).

you also do a 60 second that includes the chorus and then the 'even when I don't feel it you're working' part?" (*Id.* at WHC000003.) This 60-second excerpt was posted to Harvest Music Live's Twitter account and YouTube channel the next day. (Doc. 103-2 (Twitter screenshot); Doc. 103-6 (YouTube screenshot).)

## IV.    PLAINTIFF OBTAINS THE INVALID REGISTRATION

On October 8, 2019, David Engelhardt, one of Plaintiff's attorneys, sent a demand letter to Integrity. Acknowledging that the ten new measures that Plaintiff inserted into "Way Maker" represented a "substantial change" to "Way Maker" that was "an amalgamation and accordingly a new work," Engelhardt's letter demanded 45% of the copyright in, and all royalties received from, that "new" work. (Doc. 1-1.)

To satisfy the statutory prerequisite to bring suit for copyright infringement, Plaintiff initially sought a certificate of registration for YNSW as a published work from the United States Copyright Office in 2020. (Doc. 103-7 at USCO00000028). Recognizing that if she presented YNSW as part of a larger work that she did not author (i.e., as part of "Way Maker"), her registration application would likely be rejected, Plaintiff submitted as her deposit copy[5] the ten measures of YNSW as a stand-alone piece of music. However, she (and/or her agents, Adam Carpenter, of Plaintiff's music publisher Watershed Music Group, and David Engelhardt, her attorney) neglected to remove the measure notation of "56" from the deposit copy that she initially submitted in support of her application.  (Doc. 1 ¶ 12; *see* Doc. 103-7 at USCO0000014 (email noting that deposit copies "contain only a part of the work starting at measure 56"). This "56" notation can be seen in the upper-left-hand corner of the excerpt in Paragraph 12 of Plaintiff's

---

[5] A "deposit copy" is the copy or copies of the work that the party seeking registration is required to submit to the Copyright Office in support of her application. 17 U.S.C. § 408(b).

Complaint, and indicates that Plaintiff's alleged "work" is actually just the fifty-sixth, through sixty-sixth, measures of a much larger work that she did not author. That larger work is "Way Maker." (Doc. 66 ¶ 21; Doc. 67 ¶ 21.)

Understandably confused by Plaintiff's odd deposit copy, which reflected a song that was missing its first fifty-five measures, the Copyright Office Examiner ("T.W.") emailed Carpenter:

> I am currently examining your application for copyright registration of "You Never Stop Working". I am writing regarding an issue with the application. The files uploaded for "You Never Stop Working" contain only a part of the work starting at measure 56. ***The entire work as it was first published must be uploaded with the application before I can proceed with examining your claim***. Please upload the entire work (including measures 1-55) as it was first published by following the upload instructions below. In addition, please clarify who the authors are of the ENTIRE song. If there is an additional author or authors, please let me know, and I will advise you further. Or, if Lisa Marie Ireland-Brunson is the sole author of the entire song, please confirm.

(Doc. 103-7 at USCO0000014) (emphasis added).)

In response, Plaintiff (via Carpenter) uploaded a "new" deposit copy in place of the original, which erased the tell-tale "measure 56" notation and backdated the document to 2017. (*Id.* at USCO0000016-17 (emails reflecting revised upload); USCO0000003 (revised sheet music).) In response, the Copyright Office (through a different Copyright Office Examiner, "NEL") again sought clarification, observing that "it appears that you uploaded the same audio file, and that the sheet music you uploaded is identical to the first copy, except for the measure numbers" and that it was "unclear if these materials represent *the full published work*." (*Id.* at USCO0000018 (5/14/20 9:58 a.m. email from "NEL" to Carpenter) (emphasis added)).

There was further correspondence, and NEL, continuing to express confusion about what version of the "work" Plaintiff was seeking to register (noting that there were "multiple published versions and live recordings" available on the internet), sent Carpenter the definition of "publication" under the Copyright Act and requested confirmation that the work Plaintiff uploaded

was, in fact, published and was the "first published version" of the work that Plaintiff claimed to have "solely" authored. (*Id.* at USCO0000020 (5/15/20 11:53 a.m. email from NEL).)

At this point, Carpenter, no doubt recognizing this was a problem, stated that "his attorney" would respond to the Copyright Examiner's inquiries. (*Id.* at USCO0000021, 23). Engelhardt then responded on Plaintiff's behalf, indicating that Plaintiff would "proceed" in registering the work as "*Unpublished*" rather than published—presumably, to avoid revealing the fact that YNSW had been published and performed as part of "Way Maker." (*Id.* (emphasis added).) In a separate, unsigned email a few days later, Engelhardt stated: "According to the definition of publication outlined in your last email, I affirm the work has not been published and does not meet the publication requirement." (*Id.* at USCO0000025.) Thus, Plaintiff "proceed[ed]" with her registration as "unpublished" based on her "new" deposit copy that struck the tell-tale "measure 56" notation. (*Id.* at USCO0000003, 21, 23, and 25; *see also* Doc. 103-8 at 58:19-59:14 ("Q: And you say . . . you 'affirm' that 'the work has not been published'? A: Yes.")).)

During discovery, Plaintiff, Carpenter, and Engelhardt admitted that Plaintiff's "unpublished" deposit copy was downloaded and copied from the internet and was, in fact, the *published* sheet music of "Way Maker" as performed by the Christian rock band Leeland. (*See* Doc. 103-3 at 149:17-150:5; Doc. 103-9 at 168:9-169:8; Doc. 103-8 at 27:2-30:18; *see also* Complaint ¶ 12 (excerpt of sheet music starting at measure "56").)

On May 12, 2020, the Copyright Office registered "You Never Stop Working" as an "unpublished" work. (*See* Doc. 103-7 at USCO0000001-2, USCO0000008-10).)

## V.    PLAINTIFF INITIATES THIS ACTION AGAINST DEFENDANTS

On December 9, 2020, Plaintiff filed this action for copyright infringement based on her invalid Registration. (Doc. 1). CCMG and Integrity asserted a counterclaim against Plaintiff for copyright infringement for the unauthorized use of "Way Maker."  (Doc. 161 ¶¶ 13-26; Doc. 162

¶¶ 13-26.) Defendants moved to dismiss Plaintiff's claims on the basis that YNSW is an infringing unauthorized derivative work based on "Way Maker." (Docs. 24 and 39.) The Court declined to dismiss Plaintiff's claims, holding that at the pleadings stage, it was bound to accept as true Plaintiff's allegations that YNSW consisted of "an entirely new lyric and melodic composition." (Doc. 53 at 8.)

## VI. DISCOVERY ESTABLISHES THAT YNSW IS AN UNAUTHORIZED DERIVATIVE WORK

Now that discovery has concluded, the undisputed evidence, from both fact and expert witnesses, establishes that YNSW is not an "entirely new lyric and melodic composition," but is instead an unauthorized derivative work that Plaintiff herself inserted into "Way Maker."

### A. Leeland Mooring and Michael W. Smith

Plaintiff deposed Leeland Mooring and Michael W. Smith, the two major artists who recorded "Way Maker" including YNSW. Both testified that YNSW was not a stand-alone work but, rather, an addition to "Way Maker." As Mooring put it, YNSW is a "tag," inspired by "Way Maker" and "expound[ed]" on top of "Way Maker." (*See* SUMF ¶¶ 37-53.) During his deposition, Smith said of YNSW that "it sounded like somebody just on the fly, spontaneously threw [YNSW] in there" (i.e., into "Way Maker"). (*Id.* ¶ 56.) Smith also understood YNSW to be part of "Way Maker" "as a whole." (*Id.* ¶ 57)

### B. Dr. Lawrence Ferrara

Defendants' expert musicologist, Dr. Lawrence Ferrara, is a Professor of Music at New York University and Director Emeritus of all studies (B.M. through Ph.D.) in Music and the Performing Arts in NYU's Steinhardt School. (Doc. 121-17 at 1). Dr. Ferrara concluded that YNSW is "not an autonomous song" and "demonstrably derives and evolves from Way Maker, of which it is a part." (SUMF ¶¶ 58, 60; *see also generally* Doc. 121-17.)

Specifically, the "aggregate of similarities, and the limited differences, shared by [YNSW] and the Chorus of ['Way Maker'']," Dr. Ferrara opines, "provide very strong musicological evidence that (1) a significant amount of expression derived and evolved from the Chorus of ['Way Maker'] in [YNSW] and (2) [YNSW] *is not an autonomous song*." (Doc. 121-17 ¶ 63 (emphasis added).) "First, after removing the melodic expression in [YNSW] that derives from ['Way Maker'], relatively little melodic expression remains. Moreover, the basic harmonic expression (i.e., the basic "chord progressions" and "harmonic rhythm" defined below) is identical in the Chorus of ['Way Maker'] and [YNSW]. Therefore, after removing the harmonic expression (including the basic chord progression and the harmonic rhythm) in [YNSW] that derives from ['Way Maker'], zero harmonic expression remains." (SUMF ¶ 59.) Additionally, Dr. Ferrara opines that YNSW "connects two Choruses in ['Way Maker'] that respectively precede and follow [YNSW]." (Doc. 121-17 ¶ 4.) Rather than an "autonomous song," YNSW "demonstrably derives and evolves from ['Way Maker'], of which it is a part." (SUMF ¶ 58.)

Dr. Ferrara also concluded that the report of Plaintiff's expert musicologist, Dr. Melanie Lowe, which examines only "the differences [and] not [] the similarities that are shared between 'Way Maker' and [YNSW]" is fundamentally flawed. (*Id.* ¶ 61.) Dr. Ferrara assessed both similarities *and* differences between "Way Maker" and YNSW. However, Dr. Lowe admits that Plaintiff's counsel "asked [her] to offer a musicological report noting musical differences between ["Way Maker"] and [YNSW]." (*Id.* ¶ 62.) But "without presenting, analyzing, and assessing the similarities and the differences that are shared by ["Way Maker"] and [YNSW], the Lowe report cannot, and did not, properly provide musicological evidence to support an opinion as to whether or not expression in [YNSW] derived and evolved from ["Way Maker"]." (*Id.* ¶ 63.)

## C.    Dr. Melanie Lowe

Under oath, Dr. Lowe confirmed that she "was asked . . . to write this report on differences," and that it was "counsel's decision"—not hers—to exclude from her report the musical similarities between "Way Maker" and "YNSW" that she acknowledged exist. (SUMF ¶ 64.)[6] Dr. Lowe conceded that this kind of analysis is "uni-directional" insofar as "it's limiting your . . . focus to just one thing and *it's not really taking into consideration kind of broader musical contexts that are, you know, important to understand the piece of music as a whole*." (*Id.* ¶ 65.)

Dr. Lowe backtracked from her opinion that "Way Maker" and YNSW were "substantially different." (*Id.* ¶ 66.) She did not mean "substantially" in the sense that the works are *significantly* different—just that differences between the two works "exist." (*Id.*) Under oath, Dr. Lowe agreed with Dr. Ferrara that there are numerous similarities between "Way Maker" and YNSW. (*Id.* ¶ 67.) When Dr. Lowe was presented with the myriad similarities between "Way Maker" and "YNSW" that had been identified in Dr. Ferrara's report (approximately 14 unique similarities), Dr. Lowe did not dispute a single one. (*Id.* ¶ 68 (Q. So they have the identical harmonic structure, correct? A. They do. And you believe an ordinary listener could hear that, too, right? A: I do."; agreeing that "Way Maker" and YNSW are identical, harmonic rhythmically, and that there are no differences in terms of harmonic rhythm, between the works).) Dr. Lowe agreed not only that she *could* have prepared a musicological report on the similarities between YNSW and "Way Maker" but that the report on similarities would be longer than the one on the differences. (*Id.* ¶ 69. ) Finally, Dr. Lowe agreed with Dr. Ferrara that *YNSW cannot exist as a stand-alone work, apart*

_____

[6] Dr. Lowe also acknowledged that in the "dozens" of expert musicological reports she had prepared for lawsuits, she had never limited her analysis to merely identifying the differences between the works at issue. (SUMF ¶ 65.)

*from "Way Maker."* (*Id.* ¶ 70 ("Q: Do you have an opinion as to whether [YNSW] could exist as a stand-alone work in pop music? A: I do, and I do not think that it could.").)

### D. Dr. Lester Ruth

Defendants' liturgical expert, Dr. Lester Ruth, is a Research Professor of Christian Worship at Duke University's Divinity School. (Doc. 121-20.) An historian of Christian worship/liturgy, Dr. Ruth provided an assessment of the language of the additions Plaintiff made to "Way Maker" with special reference to their liturgical use. (Doc. 121-21 at 1.) Dr. Ruth concluded that "[i]t is not a unique experience for [Plaintiff] to have **expanded the song 'Way Maker'** with a time of 'spontaneous worship' during which she led the congregation into singing additional words not found in a song's original lyrics." (Doc. 121 ¶ 76.) He also opined that the "sentiments and the phrases of [YNSW] are not exceptionally unique, being found in other contemporaneous songs and non-lyrical writings. (*Id.* ¶ 77.) Dr. Ruth's conclusion "applies to any of [YNSW's] ideas: 1) there is divine activity; 2) this divine activity is beyond sensory or affective assessment; and 3) this divine activity is ongoing and unceasing." (*Id.* ¶¶ 78-80.)

## VII. THE COPYRIGHT REGISTER OPINES THAT SHE WOULD NOT HAVE ISSUED THE REGISTRATION HAD SHE KNOWN THE TRUE FACTS

The Publishers moved the Court to refer to the Copyright Office the issue of whether the Register would have refused the Registration had she known that Plaintiff (1) inaccurately identified YNSW as an "unpublished" work and (2) concealed that YNSW is not a "complete work" by submitting an inaccurate deposit copy. (Doc. 101.) While that motion was pending, the parties cross-moved for summary judgment. (Docs. 111 and 188.)

On March 28, 2023, the Court issued a Memorandum Opinion referring the "publication" issue to the Register. (Doc. 175.) The Court denied the pending motions for summary judgment without prejudice because "the response of the Register has the potential to materially affect the

parties' arguments and the Court's analysis." (*Id.* at 2.) The Court concluded (1) that Plaintiff's work was "published within the meaning of the Copyright Act" at the time she submitted her application for the Registration (*id.* at 15, 26) and (2) that "Plaintiff had knowledge of the facts . . . and the law" of the "inaccurate information contained on the application for the copyright registration[]" (*id.* at 32).

On June 22, 2023, the Register submitted her response to the Court's questions. (Doc. 186-1.) The Register held that had the Copyright Office known prior to registration

- that YNSW "had been posted to [Plaintiff's] church/employer's YouTube page at her direction, it would have not have registered it[]";

- that Plaintiff "authorized her employer to share [YNSW] on Twitter and Instagram, it would not have registered it[];" and

- that YNSW "was performed as part of [the version of 'Way Maker' in which the original bridge was replaced with YNSW], streamed online, and subsequently made available for download on a church website, it would not have registered it."

(*Id.* at 12-15.)

## <u>LEGAL STANDARD</u>

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## <u>ARGUMENT</u>

YNSW is an unauthorized, derivative, and therefore unprotectable work. Plaintiff's claims fail for that reason alone. Even if YNSW were protectable (it is not), Plaintiff's claims still fail because she has no valid copyright registration. In contrast, Publishers are entitled to judgment as to liability on their counterclaim for copyright infringement because Plaintiff created and exploited an unauthorized, derivative version of YNSW.

# I.  PLAINTIFF'S COPYRIGHT INFRINGEMENT CLAIMS FAIL

To prevail in an action for copyright infringement, a plaintiff must establish (1) ownership of a valid copyright, and (2) copying by the defendant. *See, e.g.*, *Bridgeport Music, Inc. v. WB Music Corp.*, 508 F.3d 394, 398 (6th Cir. 2007). Plaintiff can do neither. A copyright is only available for an original work of authorship. 17 U.S.C. § 102. As confirmed by all fact and expert witnesses, YNSW is not an original work of authorship.

## A.  YNSW, as an Unauthorized Derivative Work, Is Not Copyright Protectable

As this Court has held, unauthorized derivative works are not protectable. (Doc. 53 at 7.) Plaintiff admits that Defendants own or control the copyright in "Way Maker" and that YNSW was not authorized by Defendants. Given a full factual record, YNSW is a derivative work. Plaintiff, as the purported "creator" of an unauthorized derivative work, cannot sue the owners of the underlying, original work for copyright infringement. *See Anderson v. Stallone*, No. 87-0592 WDK (Gx), 1989 U.S. Dist. LEXIS 11109, at *31-32 (C.D. Cal. Apr. 25, 1989); *Pickett*, 207 F.3d 402, 406-07 (7th Cir. 2000).

### 1.  There Is No Genuine Dispute That Defendants, at All Relevant Times, Owned or Controlled "Way Maker"

Plaintiff expressly alleges, and thus admits, that Sinach is the author of Way Maker, and that CCMG was, and Integrity is, Sinach's "publishing administrator[]." (Doc. 1 ¶¶ 6-7; SUMF ¶ 3).

### 2.  There Is No Genuine Dispute That YNSW Is Based Upon, and Thus Derivative of, "Way Maker"

A derivative work is "a work based upon one or more preexisting works" and includes musical arrangements, dramatization, abridgments, "*or any other form in which a work may be recast, transformed, or adapted*." 17 U.S.C. § 101 (emphasis added); *see also* Melville B. Nimmer & David Nimmer, 1 Nimmer on Copyright (hereinafter "Nimmer") § 3.03 (2024).

In denying Defendants' motions to dismiss, the Court assumed the truth of Plaintiff's allegation that rather than adding new material to "Way Maker" so as to "recast, transform, or adapt" it, she "created an entirely new lyric and melodic composition . . . composed of 78 words, [with] some words repeating." (Doc. 53 at 8 (quoting Doc. 1 ¶ 11).) "Taking this allegation as true," the Court reasoned, YNSW was not derivative of "Way Maker" because the "lyrics and melodies" of YNSW and "Way Maker" are completely different." (*Id.*). Discovery, including the testimony of ***her own expert musicologist***, has now disproven Plaintiff's representation that YNSW is "an entirely new lyric and melodic composition."

**<u>First</u>**, the undisputed evidence shows that the musical similarities between "Way Maker" and YNSW far outnumber the differences. At counsel's express direction, Plaintiff's expert, Dr. Melanie Lowe, limited her inquiry to identifying only the differences that she perceived between "Way Maker" and YNSW. (SUMF ¶ 64.) However, when asked during her deposition to perform the actual work of an expert—i.e., to opine on the factual issues in this case in a manner that would be "helpful to the trier of fact," Fed. R. Evid. 702—Dr. Lowe agreed that there are also ***numerous*** similarities between "Way Maker" and YNSW. (*Id.* ¶ 67). Dr. Lowe identified at least fourteen unique musical similarities between "Way Maker" and YNSW. (*Id.* ¶¶ 68-69 (acknowledging that a musicological report on the similarities between the works would have been longer than the one she prepared on the differences).) This long list of similarities demonstrates that Plaintiff based YNSW on "Way Maker."

To be sure, there are *some* differences between "Way Maker" and YNSW. However, Dr. Lowe identified only ***three*** such differences in her Report. (Doc. 121-18 at 3; Doc. 121-19 at 66:20-22.) This is to be expected. A derivative work is not an exact copy. A derivative work must, by definition, change the work on which it was based. *See* 17 U.S.C. § 101; 1 Nimmer § 3.03 (2024)

("A derivative work consists of a contribution of original material to a pre-existing work so as to recast, transform or adapt the pre-existing work.").

**Second**, the undisputed evidence also shows that YSNW is ***not*** an autonomous work and thus cannot stand apart from "Way Maker." (SUMF ¶¶ 58, 76.) The fact and expert witnesses unanimously stated that YNSW is not an independent work and cannot stand on its own. *See, e.g.*, *Id.* ¶¶ 42 (Mooring testifying that "what gives value to [Plaintiff's] tag is the entirety of the song that Ms. Sinach wrote."); 50; 51; 57 (Smith testifying he understood YNSW to be part of "Way Maker" "as a whole."); 58 (Ferrara Report: "aggregate of similarities, and the limited differences" between YNSW and Way Maker "provide very strong musicological evidence that . . . [YNSW] is not an autonomous song"); 70 ("Q: Do you have an opinion as to whether [YNSW] could exist as a stand-alone work in pop music? [Dr. Lowe]: I do, and I do not think that it could.").) All three experts agree that "Way Maker" and YNSW are substantially similar. (*See* Doc. 121-17 (Report of Defendants' expert musicologist, Dr. Lawrence Ferrara); Doc. 119 at PageID #: 4362-63 (Plaintiff's expert testifying there are more musical similarities between the works than differences); Doc. 121-21 (Report of Dr. Lester Ruth ("Ruth Report")) at 12-16 (opining on the "commonality" between YNSW and "Way Maker," as they "rely upon a shared body of popular Scripture passages as well as a longstanding doctrine of divine providence"); *see also* Doc. 135 at ¶ 50 (Plaintiff admitting "Way Maker" includes lyric: "You are here, working in this place").)

YNSW is inextricably tied to "Way Maker." Even Plaintiff could not recall ever performing YNSW apart from "Way Maker," saying that she "probably" had, but was unable to provide any specific examples. (Doc. 121-3 at 119:23-121:1 ("Q: [D]o you have a distinct recollection of performing [YNSW] without Way Maker at [WHC]? A: I don't remember."); *id.* at 121:24-122:2).

**Third**, the undisputed evidence also shows that the lyrics and general sentiments of YSNW arose from those of "Way Maker." (SUMF ¶¶ 71; 75). Notwithstanding Plaintiff's allegation that YNSW is "an entirely new lyric and melodic composition" (Doc. 1 ¶ 11), the lyrics describing God as "working" appear in "Way Maker," as well as YNSW. *Compare* "Way Maker" ("You are here, working in this place" / I worship You . . ." (SUMF ¶ 45)) with YNSW ("Even when I don't see it, you're working" / "You never stop, you never stop working" *Id.* ¶ 6)). As Mooring observed in his deposition, Plaintiff was merely expanding on "Way Maker." (*Id.* ¶¶ 40; 44; 46; 47; 49)).[7]

"Changing the lyrics of a composition . . . creates a derivative work." *Peer Int'l Corp. v. Luna Records*, 887 F. Supp. 560, 566, n.4 (S.D.N.Y. 1995) (unauthorized alteration of lyrics infringes the right to prepare derivative works); *see also Rich & Rich P'ship v. Poetman Records USA, Inc*., 714 F. Supp. 2d 657, 660 (E.D. Ky. 2010) (song that adds recorded crowd noise to preexisting recording constitutes derivative work); *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994) (parody of a song, with modified lyrics, constitutes a derivative work); *Woolfsongs Ltd. v. Slaughterhouse, LLC*, No. 15-03049 TJH (JCx), 2016 U.S. Dist. LEXIS 184763, at *3 (C.D. Cal. Feb. 5, 2016) (finding song that "samples the instrumental portion of [plaintiff's song] throughout, a use so substantial that it makes [defendants' song] a derivative work."). Here, Plaintiff changed the lyrics of "Way Maker" when she created YNSW on the back of "Way Maker," thus creating a derivative work, albeit an unauthorized one.

### 3. Plaintiff Does Not Dispute That Her Creation of YNSW—a Derivative Work—Was Unauthorized

Plaintiff has never maintained that she sought, let alone received, permission to make a derivative work based on "Way Maker." The undisputed facts show that Plaintiff never sought, or

---

[7] Defendants' liturgical expert, Dr. Ruth, identified numerous examples of prior art, which go beyond mere thematic similarities, demonstrating substantial textual similarities. All of these examples cast doubt on the originality of Plaintiff's lyrics. (*Id.* ¶¶ 71-75).

received, permission from Defendants. (SUMF ¶ 24.)

### 4. Unauthorized Derivative Works Are Unprotectable

"A work can generally be copyrighted as a derivative work only if the new work was produced with the permission of the copyright owner of the preexisting work or its duly authorized licensee." *Palladium Music, Inc. v. EatSleepMusic, Inc.*, 398 F.3d 1193, 1197 (10th Cir. 2005) (dismissing infringement claim where plaintiff did "not dispute that its sound recordings . . . are 'based upon' preexisting works—the underlying musical compositions" and had "failed to obtain . . . licenses from the copyright owners of those musical compositions"); *see also Bridgeport Music, Inc. v. Estate of Wallace*, No. 3:05-0205, 2006 U.S. Dist. LEXIS 106442, at *20-21 (M.D. Tenn. Aug. 16, 2006) (dismissing declaratory judgment claim of ownership of musical composition, to the extent "based upon a theory that the infringing work is a derivative work" and not "based upon the existence of [a] purported license"). Moreover, case law is clear that "generally no part of an infringing derivative work should be granted copyright protection." *Anderson v. Stallone*, No. 87-0592 WDK (Gx), 1989 U.S. Dist. LEXIS 11109, at *29 (C.D. Cal. Apr. 25, 1989).

A derivative work can only be afforded copyright protection if it was authorized. Here, the undisputed evidence demonstrates that YNSW is "based upon" "Way Maker" and, therefore, it is a derivative work. 17 U.S.C. § 101; (Doc. 53 at 7.) Plaintiff cannot sue Defendants for copyright infringement based on her unauthorized derivative work, so her claims must be dismissed.

### B. Plaintiff Cannot Sue the Author/Owners of "Way Maker" for Infringement of a Work that Derives from "Way Maker"

Even assuming Plaintiff could sue a third party for infringing YNSW (and she cannot, as explained above), Plaintiff cannot sue the undisputed owners of the work from which YNSW derived for copyright infringement. To permit such a claim to proceed would be an absurd result.

Section 106(2) of the Copyright Act "most certainly precludes the author of an unauthorized infringing derivative work from suing the author of the work which he has already infringed." *Anderson v. Stallone*, 1989 U.S. Dist. LEXIS 11109, at *31-32. In *Pickett v. Prince*, the Seventh Circuit affirmed the district court's dismissal of a copyright infringement claim by the maker of a guitar in the shape of a copyrighted symbol owned by the popular singer "Prince," based on Prince's use of a similarly shaped guitar. *Pickett*, 207 F.3d 402, 406-07 (7th Cir. 2000). The court explained that the plaintiff's claim was barred because "the only copyright that [plaintiff] claims [defendant] infringed is a copyright that [plaintiff] had no right to obtain, namely a copyright on a derivative work based on [defendant's] copyrighted symbol." *Id*. at 406. The court noted the absurdity of Plaintiff's precise argument here—"claim[ing] the right to copyright a work derivative from another person's copyright without that person's permission and then to sue that person for infringement by the person's own derivative work." *Id*. at 404.

In *Christian v. Mattel*, 286 F.3d 1118, 1129 (9th Cir. 2002), the Ninth Circuit rejected a copyright infringement claim such as the one Plaintiff asserts here. The plaintiff in *Christian* alleged that Mattel, the owner of copyrights in head sculptures for the doll "Barbie," infringed his painted versions of these sculptures, which he had never been authorized to create. *See id*. at 1122-23. The district court found that Mattel, "as owner of various Barbie head sculpture copyrights," had "the exclusive right to prepare derivative works of its own copyrighted works. *See* 17 U.S.C. § 106(2)." *Id.* at 1124 (citations omitted). On appeal, the Ninth Circuit determined there was no abuse of discretion in ruling the complaint was frivolous, observing that if the precise argument that Plaintiff submitted here were adopted, the creation of an unauthorized derivative work would result in liability for the underlying work's owner exploiting his or her own work. *Id.* at 1128 ("[Plaintiff's] use of an infringing doll head coupled with 'new' face paint would result in liability

for Mattel's repainting of its prior-created Barbie doll sculptures."). Plaintiff's theory would not only impermissibly interfere with Defendants' exclusive rights, but would, absurdly, give Plaintiff effective *ownership* of "Way Maker" as it would preclude Defendants from exploiting Way Maker without a license from *Plaintiff*. "Neither common sense nor copyright law countenance such a result." *Id.*

### C. YNSW Is Not an Independent Work

Plaintiff seeks to style YNSW as an independent work. It is not. The experts **agree** that there are substantial musical similarities between the works as well as substantial similarities with respect to their lyrics and general sentiment. **Everyone** agrees that YNSW cannot exist as an independent work. (*See supra*). As Leeland Mooring put it, "what gives value to [Plaintiff's] tag is the entirety of the song that Ms. Sinach wrote." (SUMF ¶ 37; *see also id.* ¶¶ 44 (describing Plaintiff's process: "you're inspired by the lyric of the song that exists . . . and then you expound on top of that in a setting"); 39.)

Plaintiff relied primarily on *Hiller, LLC v. Success Grp. Int'l Learning All, LLC*, 976 F.3d 620, 629-30 (6th Cir. 2020) in opposition to Defendants' motion to dismiss. But *Hiller*'s intricate fact pattern is readily distinguishable. In *Hiller*, plaintiff created an unauthorized derivative work, and sued defendant Success for infringement. Intervenor Clockwork challenged Hiller, claiming that it owned the copyright in the original work, and ostensibly was the proper plaintiff. Hiller did not even name Clockwork as a party. The *Hiller* court was merely trying to determine whether Hiller created sufficient original and distinguishable content to sue the *defendant* for acts of infringement that neither Hiller nor Clockwork approved. That did not occur here. Instead, Plaintiff sued Defendants—the creator and publishers of the song that YNSW is based upon. Moreover, the HVAC "Guide" at issue in *Hiller* contained "parts" that existed separately from the unlawfully

used material, *Hiller*, 976 F.3d at 628. By contrast, here it is undisputed that YNSW is not an autonomous work, as even Plaintiff's own expert admits. (*See, e.g.*, SUMF ¶ 70.)

Plaintiff has also relied on *Bucklew v. Hawkins, Ash, Baptie & Co.*, LLP, 329 F.3d 923 (7th Cir. 2003). But that case also does not involve the unauthorized creator of a derivative work suing the owner of the original work. In fact, it *supports* Defendants' position. Bucklew sued the defendants for use of derivative electronic forms similar to Bucklew's copyrighted forms. The Court concluded that defendants' creation of a derivative version of the forms, by "introduc[ing] a number of variations," constituted infringement. *Id*. at 329 F.3d at 930. The court explained that "[v]ariants that result from tinkering with a copied form are derivative works from that form, and it is a copyright infringement to make or sell a derivative work without a license from the owner of the copyright on the work from which the derivative work is derived." *Id.*

In addition, the court held that the derivative work is not entitled to copyright protection if "confusion, or disruption of the copyright owner's plans for the exploitation of his work, would be created by allowing the unauthorized preparer to copyright his original expression." *Id.* at 930; (*see* Doc. 112 at 18 n.25 (Plaintiff acknowledging this principle by quoting *Bucklew*).) Plaintiff's unauthorized and unlawful creation of YNSW indisputably led to massive confusion and disruption regarding the licensing of "Way Maker." (Doc. 130 ¶¶ 9-10 (describing confusion and disruption caused by Plaintiff's insertion of YNSW into "Way Maker"). Even Plaintiff was confused about the effect of her creating YNSW, first claiming in October 2019 that she was the joint author of an "amalgamation" of YNSW and "Way Maker" (Doc. 111-10 at PageID #: 3980), then reversing course in June 2020 claiming that she owned an independent, protectable copyright in YNSW (Decl. of B. Slotnick ¶ 5, Ex. 2).

**D.** **YNSW Is Not Protectable Because Plaintiff's Lyrics Reflect Common Liturgical Ideas That Are Not Protectable Under the Copyright Act**

YNSW is not protectable for another, independent reason: the general sentiments and lyrical phrasing of YNSW are not unique. They are, rather, found in many other writings and musical compositions. (*See* Doc. 119 at 20-21; SUMF ¶¶ 71-75.) The ideas expressed in YNSW— *i.e.*, "1) there is divine activity; 2) this divine activity is beyond sensory or affective assessment; and 3) this divine activity is ongoing and unceasing" (*see* (SUMF ¶ 75))—are stock expressions in the worship context in which Plaintiff operates. Plaintiff cannot assert ownership in such common liturgical concepts and therefore cannot sue Defendants for infringement. *See Bridgeport Music, Inc. v. WB Music Corp.*, 508 F.3d 394, 398 (6th Cir. 2007) (stating "copying of constituent elements of the work that are original" is element of infringement claim (quotation omitted)); *Gates Rubber Co. v. Bando Chemical Indus., Ltd.*, 9 F.3d 823, 838 (10th Cir. 1993) ("Under the scenes a faire doctrine, we deny protection to those expressions that are standard, stock, or common to a particular topic or that necessarily follow from a common theme or setting."); *see Bridgeport*, 508 F.3d at 398 ("copying of constituent elements of the work that are original" is element of infringement claim).

**E.** **Because the Register Has Advised the Court that the Registration Is Invalid, Plaintiff's Claims Must Be Dismissed**

To sustain a claim for copyright infringement, a plaintiff must possess a valid copyright registration for the work at issue. 17 U.S.C. § 411(a); *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 157 (2010). A certificate of registration satisfies this prerequisite to suit "regardless of whether the certificate contains any inaccurate information, *unless*—

> (A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and
> (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration.

17 U.S.C. § 411(b)(1) (emphasis added). Plaintiff's claims must be dismissed because Plaintiff's registration is invalid, as a matter of law, for two reasons.

**First**, as the Publishers explained in their prior briefing (*see* Docs 102 at 14-17), Plaintiff inaccurately identified her published work as "unpublished." This Court has already so held. (Doc. 175 at 15- 27 (concluding Plaintiff published YNSW prior to registration). And the Register has already so agreed. (Doc. 186-1 at 16.) In addition, Plaintiff had actual knowledge of the false information included in her copyright registration, as this Court also held. (Doc. 175 at 33.) Because the Register has advised that the inaccuracy of this information, if known, would have caused the Register to refuse registration (Doc. 175 at 16), Plaintiff's registration for YNSW is invalid as a matter of law.

**Second**, as Publishers explained in their prior briefing (*see* Docs 102 at 17-18), Plaintiff inaccurately represented that YNSW is a "complete work." In declining to refer this issue to the Register, the Court stated that "if the Court were to find that Plaintiff's work is derivative, then the Court could properly consider whether Plaintiff included inaccurate information on the application for her copyright." (Doc. 175 at 28.)

For the reasons explained above, YNSW is indisputably derivative. Thus, Plaintiff submitted inaccurate information to the Register. Plaintiff indisputably had knowledge of the fact that YNSW is derivative; after all, she admittedly inserted it into "Way Maker." And Plaintiff indisputably knew that the deposit copy she submitted was incomplete; Plaintiff's submission and deletion of the measure notation "56," combined with her lawyer's deceptive correspondence with the Copyright Office in response to questions about that notation, can be explained only by Plaintiff's knowledge that the deposit copy, as submitted, was incomplete. Nor is there any question that the Register would have denied Plaintiff's application had she known that Plaintiff's

deposit copy was incomplete. As the Register has already stated, Ms. Brunson did *not* submit a complete copy of the work as first published, and doing so is a prerequisite to obtaining a registration. (Doc. 186-1 at 13-14.) Plaintiff's Registration is invalid for this additional reason.

### F. Plaintiff Has Not Established That Defendants Infringed Her Purported Copyright

In addition to proving ownership of a valid copyright, to prevail on her copyright infringement claims Plaintiff must prove that Defendants have copied or authorized the copying of her original work. *See Bridgeport*, 508 F.3d at 398. Although there are admittedly numerous cover versions of "Way Maker" that include YNSW, Plaintiff has not, and cannot, establish that Defendants violated any of Plaintiff's purported exclusive rights under Section 106. *See* 17 U.S.C. § 106. During all relevant times, Sinach granted the right to administer her copyrights (i.e., the rights to issue licenses) to others, namely TuneCore,[8] and later Integrity. Sinach did not perform, record, or copy YNSW and did not authorize anyone to perform, record, or copy YNSW. (SUMF ¶¶ 81-82). For their part, Defendants CCMG and Integrity did not grant any such licenses.[9] (*Id.* ¶¶ 83-84). The making of phonorecords is governed by a compulsory license (*see* 17 U.S.C. § 115) and public performances are controlled by blanket licenses. *See Broad. Music, Inc. v. DMX Inc.,* 683 F.3d 32, 36 (2d Cir. 2012) (performing rights organizations (or "PROs") "negotiate, implement, and enforce agreements with licensees that grant the right to perform their members' copyrighted songs" through "blanket licenses" that "grant access to a PRO's entire repertory in

___

[8] TuneCore is an online music administrator. *See* https://www.tunecore.com/music-publishing-administration.

[9] YNSW was recorded as part of Integrity artist Leeland Mooring's cover version of "Way Maker," which was then, unremarkably, registered with CCLI, uploaded to YouTube, and made available on Spotify. However, the Leeland cover was recorded and released before Integrity received Plaintiff's contradictory, pre-litigation communications that led to a period of disruption and confusion. (Doc. 130 ¶¶ 9-10.)

exchange for a flat annual fee"). Plaintiff cannot point to any licenses granted by Defendants specifically authorizing any third party to include YNSW in "Way Maker." (SUMF ¶¶ 81-84). Thus, even if YNSW were protectable (it is not), Plaintiff's claims fail because she cannot establish that Defendants copied or authorized the copying of YNSW.

## II. PLAINTIFF'S DMCA CLAIM FAILS FOR THE SAME REASONS AS HER COPYRIGHT INFRINGEMENT CLAIMS

Ownership of a valid copyright is a necessary element of any copyright infringement claim and any claim for violation of the Digital Millennium Copyright Act ("DMCA"). *See Krechmer v. Tantaros*, 747 F. App'x 6, 10 (2d Cir. 2018) (dismissing DMCA claim where plaintiffs' "allegations do not suggest that defendants had any reason to believe that the terms of their agreements with plaintiff conferred any copyright ownership on plaintiff"). Plaintiff cannot claim ownership in an unauthorized derivative work, so she cannot prove ownership of a valid copyright. Plaintiff's DMCA claim therefore fails alongside her copyright infringement claim.

## III. PUBLISHERS ARE ENTITLED TO SUMMARY JUDGMENT AS TO LIABILITY ON THEIR COPYRIGHT INFRINGEMENT CLAIM

The creation or exploitation of an unauthorized derivative work infringes a copyright owner's exclusive rights. *See* 17 U.S.C. § 106; *Murray Hill Publ'ns, Inc. v. ABC Commc'ns, Inc.*, 264 F.3d 622, 637 (6th Cir. 2001) (plaintiffs' allegation that defendant "took their works and . . . made derivative works from them . . . would, in and of itself, infringe one of the exclusive rights set out in § 106"), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 172 (2010);[10] Because YNSW is an unauthorized derivative work, it infringes Publishers'

---

[10] *See also SAS Inst. Inc. v. S&H Comput. Sys.*, 605 F. Supp. 816, 830 (M.D. Tenn. 1985) (finding derivative work infringing, and considering it "irrelevant that the [plaintiff's] product may contain, as [plaintiff] argues, significant original portions contributed by [plaintiff]"); *Frank Betz Assocs. v. J.O. Clark Constr., L.L.C.*, No. 3:08-cv-00159, 2010 U.S. Dist. LEXIS 53437, at *29 (M.D. Tenn. May 30, 2010) ("if a person copies [copyrighted] architectural drawings . . . and then

copyright in "Way Maker," which Plaintiff acknowledges that Defendants own. *See Peer Int'l Corp.*, 887 F. Supp. at 569 (awarding monetary damages for infringement of a musical composition in a derivative format); (SUMF ¶ 3.) Accordingly, Publishers are entitled to a ruling in their favor on liability on their counterclaim for copyright infringement.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that (1) the Court grant their motion for summary judgment, dismissing all of Plaintiff's claims with prejudice; (2) the Court grant their motion for summary judgment finding Plaintiff liable for infringement of "Way Maker"; and (3) the Court grant such other and further relief as it may deem just and proper.

LOEB & LOEB LLP

By:   s/ Barry I. Slotnick
      Barry I. Slotnick (admitted *pro hac vice*)     Derek C. Crownover (BPR No. 16650)
      New York Bar No. 1141753                        Keane Barger (BPR No. 031196)
      Christian D. Carbone (admitted *pro hac vice*)  Loeb & Loeb LLP
      New York Bar No. 2825560                        35 Music Square East
      Loeb & Loeb LLP                                 Suite 310
      345 Park Avenue                                 Nashville, TN 37203
      New York, NY 10154                              Tel: (615) 749-8300
      Tel: (212) 407-4000                             Fax: (615) 749-8308
      Fax: (212) 407-4900                             dcrownover@loeb.com
      bslotnick@loeb.com
      ccarbone@loeb.com

      *Counsel for Defendants*

---

builds a house based on the infringing copy, he has infringed the copyright in the original plans both by copying the drawing and by building the house").

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served via the Court's CM/ECF system upon:

Frank Wilbert (BPR No. 23090)
Butler Snow LLP
150 3rd Avenue South, Suite 1600
Nashville, TN 37201
(615) 651-6767
frank.wilbert@butlersnow.com

Michael A. Johnson (BPR No. 30210)
Kay Griffin, PLLC
222 Second Avenue North
Suite 340-M
Nashville, TN 37201
(615) 742-4800
Fax: (615) 742-4801
michael.johnson@kaygriffin.com

Fred Dalton Thompson III (BPR No. 37904)
Kay Griffin, PLLC
222 Second Avenue North
Suite 340-M
Nashville, TN 37201
(615) 742-4800
Fax: (615) 742-4801
dthompson@kaygriffin.com

on this the 22nd day of March, 2024.

s/ Barry I. Slotnick